EZRA BEALS, ADMINISTRATOR OF THE ESTATE OF WILLIAM BEALS, DECEASED v. THE BOARD OF SUPERVISORS OF AMADOR COUNTY.

INDEBTEDNESS OF COUNTY WHEN DIVIDED.—When a new county is organized out of a part of the territory before constituting another county, the claim of the old against the new county for the payment of the new county's proportion of the debt of the old county is of an equitable nature only, and requires legislation to enable the old county to enforce it.

DEBT OF AMADOR COUNTY TO CALAVERAS COUNTY.—The Act of 1855 organizing Amador County out of a part of the territory of Calaveras County, and compelling the former to pay a portion of the debt of the latter, does not require Amador County to pay interest on its proportion of the debt due to the County of Calaveras.

APPEAL from the District Court, Eleventh Judicial District, Amador County.

57

The facts are stated in the opinion of the Court.

*John W. Armstrong,* for Appellant.

Interest is now allowed at common law where there is an express or implied contract to pay interest, but without such contract it is not given, even on written instruments. (*Sammis* v. *Clark,* 13 Ill. 546 ; *Hogan* v. *Page,* 1 Bos. & Pul. 337 ; *Foster* v. *Weston,* 7 Bingh. 709, 714 ; *DeBernales* v. *Fuller,* 2 Camp. 427 ; *DeBelloix* v. *Lord Waterpark,* 1 Dow. & Ryl. 16, 19 ; Chit. on Contracts, 558, 559.) Interest was not recoverable in England for the non-payment of the principal debt due, though often demanded, until the statute of 3 and 4 Will. 4, C. 42. As there is no stipulation to pay interest in the warrant in our case, we insist that no interest is recoverable on common law principles.

But there is another ground upon which we contend that the warrant in question did not draw interest. The State never pays any interest unless she expressly agrees to pay it. It is said, " the general rule is that the State never pays interest unless she expressly engages to do so." (*Attorney-General* v. *Cape Fear Nav. Co.* 2 Ired. Eq. Rep. 454. *The State* v. *Mayes,* 28 Miss. 709 ; *Auditor* v. *Duggen,* 3 Leigh, 247 ; *U. S.* v. *Hoar,* 2 Mason, 314.) And now, if interest cannot be recovered against the State, as the county government is a portion of the State Government, (*Hunsacker* v. *Borden,* 5 Cal. 290 ; Article IX, Sec. 4, Constitution of the State ; *The People* v. *The Supervisors of Alameda County,* 26 Cal. 641,) we maintain that by parity of reasoning, interest cannot be recovered from a county unless by express agreement to pay it. (3 Atkins, 636.) Again, the statute of this State which allows interest to creditors for all moneys after they become due does not by name include the State or counties.

*P. L. Edwards,* and *Lewis Ramage,* for Respondent.

*The warrant in question lawfully bears the interest demanded.* California has never had any statute against usury, and that by the general statute regulating interest, a demand like this,

as between private individuals, must draw it. (Wood's Dig. 551.) This warrant, drawn in pursuance of the action of the Commissioners, fixed the amount due from the one county to the other, and of itself raised the obligation to pay interest. The Acts do not distinguish between general and special funds. All are equally embraced. The county is expressly bound to pay interest in any and every case within their purview, and that whether there is a State, county, or individual sovereignty involved.

In conclusion, upon this point we submit that in the absence of inhibitory statutes, the whole theory of the counsel regarding interest is at war with all modern authorities. The general principle has long been settled, that if a debt ought to be paid at a particular time, and is not paid through the default of the debtor, compensation in damages equal to the value of the use of the money, which is the legal interest, shall be paid during the continuance of the default. (1 American Leading Cases, 498, top ; *Renss. Gas Co.* v. *Reid*, 5 Cow. 587.)

By the Court, SAWYER, J.

The County of Amador having been organized out of territory before constituting a part of the County of Calaveras, the Legislature in 1855 passed an Act appointing Commissioners for the purpose, and authorizing them to ascertain the amount of indebtedness of the County of Calaveras at the time of the establishment of the new County of Amador, and to determine the amount of said indebtedness to be paid by the said County of Amador to the County of Calaveras.

Sections nine and ten of the Act are as follows :

" SEC. 9. The Board of Supervisors of Amador County are hereby authorized and required to assess a special tax of thirty cents on the hundred dollars on all taxable property of said county, to create a ' Sinking Fund ' for the liquidation of said debt; said tax to be collected at the time and in the same manner as other county taxes; and said Supervisors are required to set apart from the ' General Funds ' of said county a sum,

which, added to the ' Special Fund,' shall be equal in amount to the one half of the entire ' General Fund' of said county; which 'fund' the Treasurer of Amador County is required to set apart and reserve for the payment of said indebtedness of Amador County to Calaveras County, when ascertained in the manner above prescribed; which said 'fund' shall be appropriated to no other purpose than the extinguishment of said indebtedness; and the creation of which said 'fund' shall continue until said indebtedness be declared, and until an amount equal to said indebtedness shall be set apart and reserved by said Treasurer as aforesaid."

"SEC. 10. When the amount of said indebtedness of Amador County to Calaveras County shall have been determined by said Commissioners, they shall certify the same to the Auditor of said County of Amador, who, immediately on the receipt of such certificate, shall draw his warrant or order on the Treasurer of said County of Amador, in favor of the said County of Calaveras, for the amount of said indebtedness, as certified by said Commissioners; which warrant or order shall state upon its face that it is for the indebtedness due from the County of Amador to the County of Calaveras, as determined by the Commissioners appointed by and under the provisions of this Act; and which said warrant or order shall be delivered by said Auditor to the Treasurer of Calaveras County, and shall be paid by the Treasurer of Amador County out of the funds or moneys required to be set apart and reserved according to the ninth section of this Act."

The Commissioners in pursuance of the provisions of the Act ascertained the indebtedness, and determined that Amador County should pay to Calaveras County the sum of twenty-six thousand five hundred and seventeen dollars and thirty-two cents, for which amount the proper warrant was drawn, in pursuance of the Act, on the Treasurer of Amador County, and delivered to the Treasurer of Calaveras County. The latter immediately presented the warrant to the Treasurer of Amador County for payment, and the fund provided by law

for the payment not having been collected, the Treasurer of Amador County indorsed upon the warrant the following: "Presented and not paid for want of funds. February 18th, 1856." Subsequently, as funds for the purpose came into the Treasury, payments were made from time to time, from March 8th, 1859, to February 1st, 1861, amounting in the aggregate to the sum of thirty-one thousand four hundred and twelve dollars and eighty-three cents. The warrant in the meantime had been assigned to William Beals. The plaintiff, who is the administrator of William Beals, claims that the said warrant bore interest at ten per cent per annum from the date of its presentation for payment, and the indorsement of non-payment for want of funds, February 18th, 1856, and that there is consequently now a large amount due and unpaid. He therefore seeks, by a mandate from the District Court, to compel the Board of Supervisors to levy, and cause to be collected, a tax, to create a fund sufficient to pay the balance still due. The respondents, on the contrary, insist that the warrant does not bear interest, and that the warrant has not only been fully paid, but largely overpaid. The District Court allowed interest, and found a balance of seven thousand five hundred and thirty-two dollars and twelve cents to be still due, and accordingly ordered a peremptory mandate to issue. The Board of Supervisors appeal, and the question is whether the warrant bears interest?

There is no express contract to pay interest, and no rule of law independent of statutory provisions that would require interest to be paid. No statutory provision imposing an obligation upon the County of Amador to pay interest on the warrant in question has been brought to our notice, unless it is found in the Act of March 27th, 1850, "concerning the office of County Treasurer." Section ten of that Act provides, that when a warrant is "not paid for want of funds," an indorsement to that effect shall be made thereon, and from the date of such indorsement till redeemed said warrant shall bear ten per cent per annum interest. Subsequent sections provide for payment of such warrants upon notice to be given

when there are funds applicable to that object, in the order of presentation as shown by the dates of the indorsements; and that upon such notice being given the interest shall cease. If not presented within sixty days after notice, they cannot be paid till other registered warrants have been paid in their proper order without a special order to that effect made by the Board of Supervisors. The claim to interest on the warrant in question must rest upon these provisions, or it cannot be sustained. But we do not think the rights of the parties are governed by the provisions of this Act. The Act is one of a general character, and has reference to the general and ordinary financial operations of the several counties, and to warrants issued for usual county expenses, payable out of its general and ordinary revenues.

The claim in question was one of an equitable nature, of imperfect obligation upon the County of Amador, arising, not upon contract between the two counties, but out of the legislation of the State in dividing the County of Calaveras, and which required further legislation to ripen it into a legal liability, and enable the County of Calaveras to enforce it against the County of Amador. The Legislature recognized the equitable character of the claim, and provided means for ascertaining the amount of the indebtedness of Calaveras County, at the time of the division, and the proportion that ought to be paid by the new County of Amador; and imposed the payment of that portion, when it should be *ascertained,* upon the said county. When this proportion so equitably due and required to be paid was ascertained, the amount became the exact measure of the liability thus imposed—this amount became the "indebtedness of Amador County" mentioned in the Act. The warrant was to be drawn "for the amount of said indebtedness, *as certified by the Commissioners.*" A special tax was authorized "to create a Sinking Fund for the liquidation of *said debt*" * * * * "which fund the Treasurer of Amador County is required to set apart and reserve for the payment of *said indebtedness of Amador County to Calaveras County, when ascertained in the manner above prescribed.*" And

" *said fund shall be appropriated to no other purpose than the extinguishment of said indebtedness, and the creation of which fund shall continue until said indebtedness be declared, and until an amount equal to said indebtedness shall be set apart and reserved by said Treasurer as aforesaid.*" Now, the indebtedness here provided for is the amount ascertained by the Commissioners, and for which the warrant was to be drawn. Nothing is said about the addition of other amounts resulting as damages for default in payment of the amount of indebtedness actually ascertained by the Commissioners. The fund authorized to be raised and set apart for payment *was limited to the amount of indebtedness ascertained to be due*, and for which the warrant was authorized to be drawn. Nothing more was authorized to be paid out of that fund, and no provision was made for payment out of the General Fund. The interest accruing after default was no part of the indebtedness, for it could not exist until after the amount was ascertained and the warrant drawn, presented, and indorsed, " Not paid for want of funds." The Legislature evidently contemplated that the first year's tax might not be sufficient to pay the amount due, for it is provided that " the creation of the ' fund' shall continue * * * until an amount equal to said indebtedness shall be set apart and reserved by said Treasurer, as aforesaid." Yet they did not authorize interest to be paid in case of such delay. Only the specific indebtedness found to exist at the time was provided for, and not such indebtedness, and any interest that might accrue thereon. Undoubtedly it was competent for the Legislature to have imposed the payment of interest also, in case of default in payment of the principal, but it did not do it. Nor did it even authorize the money to be paid any faster than the specific revenue authorized to be provided should be sufficient to pay it. If the amount authorized to be raised should be insufficient to pay the full amount during the first, or second, or even third year, *there would be no default as to the excess*, even admitting that the county was authorized to pay in instalments, for it must be paid out of the specific fund, and such fund was limited in amount by the Act itself.

The Act in question is specific, relating to a single transaction, imposing a specific liability upon the County of Amador, willing or unwilling, and providing a specific remedy for discharging it. The Act itself prescribes the measure of the liability, and the means of discharging it, and furnishes the entire rules by which the rights of the two counties are to be governed.

We think it was not contemplated that the indebtedness should bear interest. The judgment must therefore be reversed and the District Court directed to deny the mandate, and it is so ordered.