## KENNEDY v. CITY OF SACRAMENTO.

*(Circuit Court, D. California. February 18, 1884.)*

1. MUNICIPAL BONDS—SACRAMENTO CITY—NO ACTION MAINTAINABLE.

    The legislature of California in 1858 enacted that thereafter no action should be brought against the city of Sacramento by its creditors; that the city should issue its bonds for the purpose of funding its debt, and should levy an annual tax of 1 per cent., of which a specified portion should be set aside for the payment of the bonds. Those who held claims against the city surrendered their evidences of indebtedness, and took the bonds instead. · *Held,* that no action would lie upon the bonds, but that the rem·dy of the bondholders was by *mundamus* against the proper officers to compel them to carry out the terms of the statute. The creditors, by accepting the bonds, contracted that the city should not be liable to be sued.

2. STATUTE PERMITTING PERFORMANCE OF A DUTY CONSTRUED AS MANDATORY.

    In 1863 the legislature revised the act of 1858, re-enacted its provisions with regard to the payment of the bonds, except that the terms of the re-enacted clause, sanctioning a tax of 1 per cent., was permissive instead of mandatory. But, *held,* that the provision was still compulsory, since words in a statute per-. mitting officers to discharge a public duty are to be construed as mandatory. If the act were susceptible of any other construction it would impair the obligation of contracts.

3. WAIVER OF CONSTITUTIONAL RIGHT.

    ·The constitution of the state provided that all corporations should be subject to be sued like natural persons. *Held,* that (even supposing the clause to apply to municipal corporations) the bondholders had by their contract divested themselves of their constitutional right.

At Law.

*J. W. Winans,* for plaintiff.

*J. H. McKune, A. P. Catlin,* and *W. A. Anderson,* for defendant.

SAWYER, J., *(orally.)* This is an action brought to recover $9,000 due on coupons of the Sacramento city bonds. It is an ordinary action upon the instruments, not a *mandamus* against the officers of the city, but an action against the city of Sacramento to recover on these coupons as upon a contract. Under the charter of Sacramento, of 1851, a large amount of indebtedness had accrued, for which bonds were issued. In 1858 the city and county of Sacramento were consolidated into a municipal corporation, like the city and county of San Francisco; the boundaries of the city and county being co-extensive with the former boundaries of the county. In that act consolidating the city and county, provision was made for funding the then existing debt of the city and of the county of Sacramento, and provision was made in the act for the purpose of liquidating, funding, and paying the claims against the city and county of Sacramento hereinafter specified. "The treasurer shall cause to be prepared suitable bonds for the county of Sacramento, not exceeding the sum of six hundred thousand dollars, and for the city of Sacramento not exceeding one million six hundred thousand dollars, bearing interest at the rate of six per cent. per annum, from the first day of January, 1859." St. 1858, p. 280, § 37. Then it provides for raising a fund for the payment of the interest, and ultimate extinguishment, of that

prior indebtedness of the city of Sacramento so funded. In the last clause of the section it provides that "*none of the claims herein specified shall be liquidated or paid except in the manner herein provided.*"

The act also provides that "the city and county shall not be sued in any action whatever, nor shall any of its lands, buildings, improvements, property, franchises, taxes, revenues, actions, choses in action, and effects, be subject to any attachment, levy, or sale, *or any process whatever, either mesne or final,*" (Id. p. 268, § 1,) thereby cutting off all right of suit, and providing that none of the funds, or revenues from taxation, or otherwise, shall be reached, on account of this indebtedness, otherwise than as provided in the act.

Section 34 provides that the board of supervisors shall not have power to levy any greater taxes than as follows, viz.: "On the real and personal estate, except such as is exempt by law throughout the city and county, a tax of one hundred cents on the one hundred dollars," shall be levied, and the amount is limited to that sum annually, except for state and special purposes. But it provides further, that "they shall levy for municipal purposes, on all real and personal property within the city, except such as is exempt by law, a tax of one hundred cents on one hundred dollars."

Section 35 provides that "the revenue derived from and within the city limits for municipal purposes,—namely, taxes, licenses, harbor dues, water-rents, and fines collected in the mayor's court, or otherwise,—when paid into the treasury, shall be set apart and appropriated as follows: *Fifty-five per cent. to an interest and sinking fund, which shall be applied to the payment of the annual interest and the final redemption of bonds issued for city indebtedness, in accordance with the provisions of this act,*" referring to the bonds which were to be issued in liquidation of the prior indebtedness of the city in pursuance of the terms of the act.

Section 38 provides: "*The annual interest and principal of all bonds issued for claims against the city shall be paid from the interest and sinking fund provided in section 35, and in the manner otherwise provided in this act.*"

There is, then, a provision for funding the prior indebtedness of the city to the amount of $1,600,000, and provision that 55 per cent. of the taxes and other revenues of the city shall be set apart to pay the interest, and to secure the ultimate extinguishment, of the bonds; and it is provided that "*none of the claims herein specified shall be liquidated or paid, except in the manner herein provided;*" and it is further provided that there shall be no suit against the city on those or any other claims, and that no execution or other process shall issue by which any of the property or revenues or moneys or other resources of the city shall be reached.

The rate of interest was 6 per cent. per annum, to be paid upon the indebtedness. The parties who surrendered their prior evidences of indebtedness and took these bonds, took them under the provis-

ions of this act, which was a contract made between the city and them; that the bonds should be collected only in that particular manner, and paid in that particular mode, and no other; that there should be no other remedy for them; that the city should not be sued. The advantages which they obtained are subject to the provisions made for their payment—to the limitations put upon their remedy. The advantage to the city was that it should not be harassed by any other kind of suit; an extension of the time for payment; and the reduction of the rate of interest. The advantage to the holders was the specific, certain, and permanent provision made for prompt payment in future. This was a fair contract, entered into between the city on the one hand and its creditors on the other, in virtue of the provisions of this act. There were advantages gained and rights surrendered by each, and a valuable consideration moving from and to both contracting parties. In 1863 that charter was repealed and another one passed. The city and county were restored by the charter of 1863. In that charter it is provided that the city of Sacramento may be sued upon bonds or covenants, etc., "provided, however, that such bond, covenant, agreement, contract, matter, or thing, that was the cause of action, has been made or entered into after the passage of this act," (St. 1863, p. 415, § 1;) so that, by implication, in providing the kinds of bonds upon which suit might be brought, it was limited to the covenants or bonds or liabilities accruing after the passage of the act. Thus, as to these bonds in question, there is no change in the law with reference to the liability of the city to be sued. And in that act it is also "provided further that none of the lands, tenements, hereditaments, taxes, revenues, franchises, action, choses in action, property, or effects of any kind or nature whatsoever, of said city or of either or any of its trusts or uses, shall be attached, levied upon, or sold, on any process whatever, either original, mesne, or final," thereby continuing, as to *all* demands against the city, that provision of the charter of 1858 having reference to the inability to execute a judgment when obtained, by virtue of any process, mesne or final, against the city itself. With reference to the city of Sacramento, therefore, and with reference to these bonds, in both of these particulars, the law as laid down in the act of 1858 is continued.

The third clause of section 2 of the the act of 1863 also provides that the board of trustees shall have power "to levy and collect taxes and assessments on all property within the city, both real and personal, made taxable by law for state or county purposes, which taxes shall not exceed 1 per cent. per annum upon the assessed value of all property." St. 1863, p. 416. That is the same amount that they could levy under the old charter. Section 26 continues the provision for the payment of the bonds in question with one exception in language. In this act the words *"net water rents"* are used instead of "water rents." This is the only change. The provision is as follows, viz.:

"The revenue derived from and within the city limits for municipal purposes, viz., taxes, licenses, harbor dues, *net* water rents, and fines collected in the police courts or otherwise, except as hereinafter provided, when paid into the treasury, shall be appropriated and divided as follows: *Fifty-five per cent. to an interest and sinking fund, which shall be applied to the payment of the annual interest upon the bonds legally issued for city indebtedness, issued under the act of* 1858; *the excess of said fund, after the payment of said interest, shall be applied to the redemption of said bonds, in such manner as the board of trustees may determine."* Id. p. 426, § 26.

Thus in the act of 1863 the same provision for the payment of these bonds is continued that was made in the act of 1858, and the the same limitations upon the remedy are continued by providing that no suit shall be maintained against the city, and that none of its property, or revenues, or funds, shall be reached under any process, mesne or final.

With reference to the amount levied, one word is changed only, the positive provision in the old act that 100 cents on the $100 shall be raised each year for the purposes of revenue is made permissive in form instead of mandatory in the new act. This is the only change in the act in that particular, the same provision otherwise continuing as provided in the other act. But words permissive in form, when a public duty is involved, are construed as mandatory. Under the provisions of these acts, in my judgment, the city is not liable to be sued on these bonds or coupons. It is one of the terms of the contract between the city and the bondholders, and a part of the consideration upon which the bonds were issued, that the city shall not be sued on them. The remedy alone is to compel the treasurer, by *mandamus,* to pay any money in the sinking fund upon the coupons. If the board of trustees refuse to provide that fund, the remedy is to compel them to provide a fund by a *mandamus,* in accordance with the duty imposed upon them by law. These are proceedings personally against the officers to compel them to perform a duty enjoined by law, in respect to which they have no discretion. Both of these remedies are remedies against officers to compel the performance of duties required by these express provisions of the act for the payment of these bonds, and not a suit against the city. Those remedies, the supreme court of California has held, are available.

In the case of *Meyer* v. *Brown,* decided on September 28, 1883, the supreme court held that the board of trustees is subject to be compelled to perform its duty to provide this fund by *mandamus.* On page 157 of the Pacific Coast Law Journal, the court says:

"Having thus made provision for the payment annually of the interest on the bonds, and ultimately for their redemption, the legislature offered them in payment of the legal claims against the old city government. The offer was accepted, and the holders of the latter surrendered their claims, in consideration of which the consolidated government issued to them its bonds, pursuant to the provisions of the act. The bonds carried with them the pledge of an annual tax for municipal purposes on all real and personal property within the city limits, except such as is exempt by law, of one hundred cents

on the one hundred dollars, fifty-five per cent. of which to be set apart and appropriated to an interest and sinking fund to be applied to the payment of the annual interest upon the bonds and to their final redemption. The tax was the chief security offered the creditors as an inducement to accept the bonds in payment of their claims. When the bonds, for whose payment with interest provision was thus made, were issued and accepted by the creditors of the old city government, a contract was made as solemn and binding, and as much beyond subsequent legislation, as it would have been if made between private persons. These views will be found sustained and amplified in an able opinion recently rendered by the supreme court of the United States in a case entitled *Louisiana* v. *Pilsbury.* 105 U. S. 278."

I have examined that case, and it fully sustains this proposition. It is a similar case. The contract was enforced by *mandamus* upon the officers. "It is well occasionally," added the court, "to recall the fact that there is no more reason to permit a municipal government to repudiate its solemn obligations entered into for value than there is to permit an individual to do so. Good faith and fair dealing should be exacted of the one equally with the other." In that case, then, it was held that the board of trustees was bound to go on and levy this tax in pursuance of the old law, if that was more advantageous to the parties than the new one. It is incompetent for them to repeal the old statute, so far as it affected the right of these bondholders; and in a recent case, decided February 13, 1884, (the case of *Meyer* v. *Porter,* 2 Pac. Rep. 884,) the supreme court of California again takes a similar view. The question was whether the treasurer may be compelled to pay the interest out of the fund provided; and the supreme court holds in this case that the treasurer may be compelled to pay out of the moneys which are in that sinking fund the interest due upon coupons that are presented, irrespective of the fact that only one party presents his coupons. Under this decision, so long as there is any money in the fund, the holder of coupons due is entitled to his money on their presentation, and it is not necessary to file a bill in equity to enforce a trust, making all the holders of the bonds and coupons parties, for the purpose of distributing the fund *pro rata,* but that any man having overdue coupons may by *mandamus* compel the treasurer to pay out the funds upon such coupons, so long as there are funds. Under those decisions of the supreme court of the state, supported by the authority of the supreme court of the United States, the holders of bonds and coupons have the exact remedy which the provision of the charter of 1858 provides for the payment of those bonds, and which the act of 1863 continues; and if the latter act does not in all respects continue the remedy in the particulars wherein the former act was repealed, the repeal is void, and the old act in force.

The plaintiff insists that the provisions of the charter of Sacramento of 1858, that the city shall not be sued, and continued with respect to the bonds and coupons in question in the act of 1863, is void under the provision of the state constitution that "all corpora-

tions shall have the right to sue, and shall be subject to be sued, in all courts in cases like natural persons." Old Const. art. 4, § 33. It may well be doubted whether this provision applies to municipal corporations and counties made corporations. But if it be otherwise, the contract in this case takes the bonds in question out of the provision. It was one of the conditions upon which the bonds were issued by the city and accepted by the bondholders that there should be no suit on the bonds, and no other remedy than that provided by the charter. This was a part of the benefit to inure to the city by the arrangement, and an important and valuable part of the consideration for its action in issuing the bonds and making the extraordinary and permanent provision and appropriation for payment beneficial to the bondholders. This part of the contract is as important and as binding as any other. The provisions are that the city shall not be sued, and that none of its property, revenue, or funds shall be taken upon any mesne or final process, and that none of the claims herein specified shall be liquidated or paid except in the manner herein provided. Also, that "the annual interest and principal of all bonds issued for claims against the said city shall be paid from the interest and sinking fund provided by section 35, and in the manner otherwise provided in this act." The action brought against the city, therefore, in the face of these provisions of the contract, cannot, in my judgment, be maintained, for the reasons and upon the grounds stated. The only remedy is to proceed by *mandamus* against the officers personally, to compel them to perform their respective duties, as prescribed by the act of 1858, and under the act of 1863, also, so far as that act is in accord with the act of 1858. The supreme court, as we have seen, has held that it was incompetent for the legislature to repeal the provisions of the charter of 1858, so far as they affect the means provided for liquidation of these bonds. Consequently, that the board of trustees could be compelled by *mandamus* to provide the funds in accordance with the requirements of the charter of 1858; and, when so provided, that the treasurer, having the custody of the funds, could be compelled in like manner to pay the coupons as presented out of the funds provided.

There must be judgment for defendant on the grounds indicated, viz., that a suit against the city is not the proper remedy, and cannot be maintained in the face of the contract entered into under the statute; and it is so ordered.