[Sac. No. 152.   In Bank.—February 14, 1898.]

## W. S. KENDALL, Appellant, v. JAMES M. PORTER, Treasurer of City of Sacramento, Respondent.

INTEREST—MATURED MUNICIPAL BONDS—COUPONS.—Matured municipal interest bearing coupon bonds continue to bear interest after their maturity, when there is nothing in the statute providing for them to indicate the contrary; and the fact that the coupons for interest attached to the bonds extend only to the maturity of the bonds is indicative only of a presumption that the bonds will be paid at maturity, and does not affect the continuance of interest, if the bonds are not so paid.

ID.—BONDS OF CITY OF SACRAMENTO—CONSTRUCTION OF STATUTES AS TO INTEREST.—The statutes under and by virtue of which the bonds of the city of Sacramento were issued are the measure of the rights of the bond-

holders; and under a proper construction of their provisions they indicate the intent that the bonds shall bear annual interest from the date of their issuance until the time of actual payment, as part of the contract.

ID.—MANDAMUS TO TREASURER—SUFFICIENCY OF MONEY TO PAY INTEREST—PRESENTATION OF BONDS—DEMURRER TO PETITION—MATTER OF DEFENSE.—Upon an application for a writ of mandate against the city treasurer to compel the payment of the principal and interest of overdue bonds of the city of Sacramento, the questions whether or not there was money in the treasury to pay the bonds at maturity, and whether a holder of bonds could claim interest, if he failed to present the bonds at maturity, do not arise upon demurrer to the petition for the writ, where the facts therein stated are such as to disclose the explicit duty of the treasurer to pay the principal and interest of the bonds, but such questions can only be considered upon facts to be pleaded by way of defense to the application.

APPEAL from a judgment of the Superior Court of Sacramento County. Matt. F. Johnson, Judge.

The facts are stated in the opinion of the court.

F. S. Sprague, E. S. Pillsbury, and W. B. Treadwell, for Appellant.

Holl & Dun, Robert T. Devlin, Bishop & Wheeler, and Hiram W. Johnson, for Respondent.

THE COURT.—This cause was submitted in Bank, and on June 9, 1896, the following decision was rendered:

"HENSHAW, J.—This is an application for a writ of mandate to compel the respondent, as treasurer of the city of Sacramento, to pay the plaintiff the principal of certain overdue bonds of the city of Sacramento, with interest thereon from the date of their maturity. A demurrer to the petition was sustained by the trial court, and judgment thereupon entered against plaintiff, from which judgment he prosecutes this appeal.

"The question thus presented is whether the bonds of the city of Sacramento, issued under the provisions of the act of April 25, 1858 (Stats. 1858, p. 267), bear interest after their maturity.

"Various questions touching the construction of the act of 1858, under which these bonds were issued, and the rights of the bondholders thereunder, have been decided by this and other courts. (*Meyer v. Brown,* 65 Cal. 583; *Davis v. Porter,* 66 Cal.

658; *Bates v. Porter,* 74 Cal. 224; *Bates v. Gerber,* 82 Cal. 550; *Davis v. Sacramento,* 82 Cal. 562; *Kennedy v. Sacramento,* 10 Saw. 29.) By these cases it is held that the act constitutes a contract between the city and the bondholders, and that the bondholders' rights upon the one hand, and the duties of the city and its officers upon the other, are measured by the terms of the statute. Thus in *Davis v. Porter, supra,* the court decided that the treasurer of the city was not authorized to pay interest on coupons after they had matured and remained unpaid, holding that the overdue coupons did not bear interest, because the act nowhere in its terms provided for the payment of interest upon interest. *Bates v. Gerber, supra,* affirmed the case of *Davis v. Porter, supra,* and the court said: 'The statute under and by virtue of which the bonds were issued was the basis of and became part of the contract, and the bondholders must be held to have taken the bonds with the understanding and agreement that they were only entitled to the principal and the annual interest, and that, if the fund provided for the payment thereof should be insufficient to meet the same that no interest on the coupons was provided for or could be recovered.'

"The statute being thus the measure of the bondholders' rights, it becomes important to consider its provisions in relation to the interest upon the bonds, for the bondholders will be entitled to just such interest and no other as by a fair intendment the statute provides that they shall have. Section 37 of the act authorizes the city of Sacramento to issue bonds, not exceeding the sum of one million six hundred thousand dollars, 'bearing interest at the rate of six per cent per annum from the first day of January, 1859, and payable at the office of the treasurer. . . . . The interest on said bonds shall be made payable at the office of the treasurer, on the first day of January of each year. . . . . Coupons for the interest shall be attached to each bond so that they may be removed without injury to the bond. Said coupons consecutively numbered shall be signed by the treasurer.' Section 38 provides: 'The annual interest and principal of all bonds issued for claims against said city shall be paid from the interest and sinking fund provided by section 35, and in the manner otherwise provided in this act.' Section 40 provides: 'It shall be the

duty of the treasurer to pay the interest on said bonds, when the
same falls due, out of the interest funds, as provided in this act.'
Section 35 of the act creates the interest and sinking fund, and
declares that the fund 'shall be applied to the payment of the
annual interest, and the final redemption of bonds issued for
city indebtedness.' It is by this language specifically declared
that the bonds shall bear interest; that the interest shall be pay-
able annually from the date of their issuance, and that the in-
terest shall be made a charge upon and payable out of a fund cre-
ated by and designated in the act. There is no suggestion or inti-
mation that the interest is to cease upon the maturity of the
bond. It is a rule so general and well established that it is not
even controverted by respondents in this case that interest bear-
ing coupon bonds continue to bear interest after their maturity.
(*People v. Getzendaner*, 137 Ill. 234; *Pruyn v. Milwaukee*, 18 Wis.
367; *Cromwell v. County of Sac*, 96 U. S. 51; *Beckwith v. Hart-
ford etc. R. R. Co.*, 29 Conn. 268; 76 Am. Dec. 599; Stats. 1850,
p. 92; Civ. Code, secs. 1917, 1918; *Kohler v. Smith*, 2 Cal. 597;
56 Am. Dec. 369; *Nash v. Eldorado Co.*, 24 Fed. Rep. 252.)

"To take these bonds out of the operation of this rule there
must be pointed out some language in the statute evincive of an
intent so to do, some declaration which will justify the court in
saying that it was designed that the interest should cease upon
the maturity of the bond. That this intent can be deduced from
the fact that the coupons attached to the bonds extended only
to maturity is a proposition met and disposed of by *People v.
Getzendaner, supra,* and *Pruyn v. Milwaukee, supra.* The at-
tached coupons never extend beyond the maturity of the bond.
The presumption is always that a contract will be performed, not
violated. It is presumed, therefore, that the bonds will be met
and paid at maturity.

"When we come to scan the language of the act above quoted,
we find that the bonds are to bear annual interest from the date
of their issuance, without any limitation upon the length of time
that annual interest is to run. We find that the interest is pay-
able at the office of the treasurer on the first day of January of
each year. We find also that a fund is created which is to be de-
voted to the payment of the annual interest and to the final

redemption of the bonds, and, finally, that it is made the duty of the treasurer to pay the interest on the bonds, when it falls due, out of the interest funds provided in the act. These terms not only show no intention to terminate the interest upon the maturity of the bonds, which intention must be expressed if this contract is to be made an exception to the general rule, but, to the contrary, they indicate with some clearness the intent that the bonds shall bear annual interest from the date of their issuance until the time they are actually paid. Nor can there be discerned in this any hardship upon the city. It is but the application of the general statutory rule allowing interest for the detention of moneys due.

"In *Beals v. Amador County*, 28 Cal. 449, which is relied upon by respondent, the question under consideration by the court involved and was determined upon an entirely different principle from that which governs this consideration, and this was pointed out by the learned author of that opinion in *Nash v. El Dorado County*, 24 Fed. Rep. 252. In *Beals v. Amador County, supra,* an equitable demand growing out of the division of a county had been recognized by the legislature, which had imposed upon the new county an obligation to pay a specific sum. The obligation extended no further than the law expressly required, and the general principle here is as declared in the case of *Whiteman v. United States*, 23 Ct. of Cl. 144, that from a legal obligation created solely by statute no obligation to pay interest will ordinarily arise. In the case at bar, however, the obligation to pay interest is itself a part of the contract.

"The declaration in *Soher v. Calaveras County*, 39 Cal. 134, that interest was not provided for after the maturity of the bonds, is explicitly made to rest upon the authority of *Beals v. Amador County, supra,* but as has been said, and as was pointed out by the learned author of the opinion in *Beals v. Amador County, supra,* the case is not authority for such a doctrine.

"The question whether or not there was money in the treasury to pay the bonds at the time they became due, and that thus the holder of a matured bond who had failed to present it at maturity could not recover interest, does not here arise. If such be the facts, they might constitute a defense to the present action,

but they cannot be considered upon demurrer. The treasurer is specially charged with the duty of paying the interest. If he can make a valid and sufficient showing why that interest should not be paid, he may make it in his return, but under the facts here pleaded, as it is made the explicit duty of the treasurer to pay the interest upon these bonds as it becomes due, *mandamus* may be employed to compel him to perform that duty.

"It follows, therefore, that the demurrer was improperly sustained. The judgment is reversed and the cause remanded, with directions to the trial court to overrule the demurrer to the petition, with leave to the treasurer to make his answer or return thereto.

"Garoutte, J., Temple, J., and Harrison, J., concurred."

Thereafter, upon petition of attorneys for defendant, a rehearing in Bank was granted, and upon further argument the cause was again submitted.

After due consideration, we are satisfied that the opinion heretofore rendered in Bank is sound, and for the reasons therein set forth it follows that the demurrer was improperly sustained. Therefore the judgment is reversed and the cause remanded, with directions to the trial court to overrule the demurrer to the petition, with leave to the treasurer to make his answer or return thereto.

McFARLAND, J., dissenting.—I dissent, and am of the opinion that the judgment of the court below should be affirmed.

The rights which the appellant has against the city are not those of a general creditor. He could not recover a judgment against the city, upon his bonds, for a single dollar; for the bonds were issued and accepted by the bondholders under a statute which provides that the city "shall not be sued in any action whatever." The complaint does not show the form of the bonds; but, assuming that they are on their face similar to ordinary bonds issued by corporations, they do not in themselves constitute complete and independent contracts. They are only parts of the contract which was made between the bondholders and the city by the passage of the act of April 24, 1858, and the issuance and acceptance of the bonds according to the provisions of that act—a contract, as was said in *Meyer v. Brown*, 65 Cal. 589, "as

solemn and binding . . . . as it would have been if made be-
tween private persons." By that contract they waived all rights
as general creditors under their old floating demands against the
city, which were of uncertain value, and agreed to rely upon a
special trust fund to consist of fifty-five per cent of the revenue
derived by the city from certain enumerated sources, which sub-
stantially included all sources of revenue, and waived all right to
sue the city. The contract was undoubtedly a good one for the
bondholders; and this court has construed it very liberally in their
favor. For instance, it was held in *Bates v. Porter*, 74 Cal. 224,
by a majority of the court, that fifty-five per cent of the "revenue
derived" from "water rents" meant fifty-five per cent of the gross
receipts of the city's waterworks. But their legal remedies are
confined to proceedings to compel the officers of the city to per-
form the duties enjoined upon them by the said act of 1858, and
other supplementary acts not important here. The question,
then, is not whether, under general law, coupon bonds bear inter-
est after the exhaustion of the coupons for which judgment may
be recovered, but whether under the said statutes, the payment of
interest on the bonds other than that evidenced by the coupons
is "an act which the law specially enjoins" upon the city treas-
urer "as a duty resulting from" his office, and which he may be
compelled to perform by *mandamus*. Section 40 provides that
the treasurer shall pay "the interest" on said bonds "as provided
in this act"; and section 37, in which authority for the issuance
of the bonds is given, provides that "the interest" shall be pay-
able annually at the office of the treasurer; but the latter section
also provides that "coupons for the interest shall be attached to
each bond"; and the whole tenor of the act seems to me to be
clearly to the effect that it is not the duty of the treasurer, nor
has he the power, to pay any interest other than that represented
by the coupons. I think that the correct construction of the act
is expressed in the opinion of Fox, J., in *Bates v. Gerber*, 82 Cal.
553, as follows: "It did not provide for either principal or inter-
est bearing interest after maturity, and provided no fund to meet
such added liability." The treasurer is nowhere required, in the
event of the bonds not being satisfied at maturity, to pay interest
by way of damages. This is the view that must have been enter-
tained in *Davis v. Porter*, 66 Cal. 658, where it was held that it

was not the duty of the treasurer to pay interest on overdue coupons; and it is conceded that, under the general authorities, interest on matured and unpaid coupons stands in the same category with interest on the principal of a coupon bond after the exhaustion of the coupons. Moreover, in that case the view of the court must have been the same as that hereinabove stated, for in the opinion of the court it is expressly said: "The court cannot, therefore, issue any command to the defendant to pay beyond the annual interest evidenced by the coupons involved in this proceeding," and cites *Soher v. Supervisors,* 39 Cal. 134, and *Beals v. Supervisors,* 28 Cal. 449; and those cases are, I think, clearly in accordance with the views above expressed. In the Beals case, interest was claimed upon an overdue debt of the county of Amador; but the amount was to be paid out of a special fund as provided by an act of the legislature, and the court say: "Nothing is said about the addition of other amounts resulting as damages for default in payment," and the claim for interest was denied. And so in the case at bar there is no provision for the payment out of the special fund of anything other than the coupons and the principal of the bonds. While the bondholders, if they could sue the city, might recover judgments for interest accruing after the maturity of the bonds, there is no provision in the act for the payment of such interest by the city treasurer out of the special trust fund. When the bondholders entered into the contract they anticipated, no doubt, as they well might, that the enormous trust fund created by the act, into which more than one-half of all of the revenues of the city went, would be amply sufficient to pay the coupons as they should fall due and the principal of the bonds when they should mature; and therefore no provision was made for the payment out of the trust fund of interest as "damages in default of payment" in the event that the fund would not be sufficient to satisfy the principal at maturity. I think that in the case at bar the majority opinion treats this proceeding as an action against the city by a general creditor to recover a judgment for interest on overdue bonds; but, in that view, appellant could not recover either the principal or interest of his bonds, for both would be barred by the statute of limitations.

BEATTY, C. J., dissenting.—I dissent. This is a proceeding by *mandamus* to enforce payment of interest on certain bonds of the city of Sacramento. The bonds fell due on the first day of February, 1888, and on the twelfth day of February, 1895, the holder presented them to the city treasurer with a demand that he should pay the principal and interest thereon from maturity. The treasurer refused to pay any interest, and refused to pay the principal except upon condition that the bonds should be surrendered. He took the position, in other words, that the bonds ceased to bear interest at maturity, or, if they did not cease to bear interest, his duty at all events required him to pay the principal alone, and to insist upon the surrender of the bonds as a condition of payment. In the superior court, the position of the treasurer was upheld—his demurrer to the petition for the writ was sustained, and the proceeding dismissed.

From that judgment the plaintiff appeals, and in support of his appeal contends: 1. That the bonds in question continued to draw interest at the conventional rate after maturity; and 2. That it was the duty of the defendant to pay the bonds, with accrued interest, out of the funds in his hands.

If the appellant has failed to establish either of these propositions the judgment of the superior court should be affirmed.

I think it clear that the appellant has failed to establish the first proposition, and, if so, the second need not be considered, though it seems equally clear to my mind that, even conceding the plaintiff's right to interest, it has been settled by several decisions of this court that it is not the legal duty of the treasurer to pay the accrued interest out of the funds in his hands, and, consequently, that *mandamus* is not the proper remedy.

The bonds in question were issued in pursuance of the act of April 24, 1858, by which the city and county of Sacramento were brought under a consolidated government. (Stats. 1858, p. 267.) At that date, there was outstanding against the city of Sacramento a large floating indebtedness, and the act provided for funding the whole of it upon terms which may be said to have embodied a compromise between the city and her creditors.

By section 37 of the act it was provided that, for the purpose of liquidating, funding, and paying the claims against the city of

Sacramento, the treasurer should cause to be prepared suitable bonds of the city, not exceeding the sum of one million six hundred thousand dollars, bearing interest at the rate of six per cent per annum from the first day of January, 1859, and payable at the office of the treasurer, one-fourth on the whole amount on the first day of February, 1888, one-fourth on the first day of February, 1893, one-fourth on the first day of February, 1898, and one-fourth on the first day of February, 1903. The interest on the bonds was to be made payable at the office of the treasurer on the first day of January of each year, and coupons for the interest were required to be attached to each bond in such manner that they could be removed without injury to the bond.

These bonds were to be issued in liquidation of all legal debts of the city of Sacramento unpaid or unprovided for on the first day of January, 1859. It was provided that the claims against the city should be funded in the order of their reception in bonds having the shortest time to run. These were the main, and indeed all, the essential provisions of the act as to the refunding of the floating debt of the city, and, if there had been no other special provisions as to the time and mode of payment of the bonds and coupons, they would have carried with them the usual obligations and incidents of such securities. But there were very special and peculiar provisions contained in the act regulating and restricting the rights of the bondholders as to the time and manner of payment. The bonds were not a general obligation of the city payable out of any unappropriated revenue, but were to be paid only as provided in the act; that is to say, out of the special sinking and interest fund thereby created. Fifty-five per cent of the city revenues were set apart to this fund, and it was to be applied to the payment of the annual interest and final redemption of the bonds. (Act, sec. 35.) It was made the duty of the treasurer to pay the interest as it fell due out of the interest funds as provided in the act. (Act. sec. 40.) But the city was not to be sued in any action whatever, nor were any of its "lands, buildings, improvements, property, franchises, taxes, revenues, actions, choses in action and effects to be subject to any attachment, levy, or sale, or any process whatever either mesne or final." (Act, sec. 1.)

If in any year there remained in the fund after paying the annual interest a surplus amounting to one thousand dollars, it was made the duty of the treasurer to advertise for the surrender of bonds, and to redeem those that were offered at the lowest rate not exceeding par. (Act, sec. 39.)

Such being the provisions of the statute, and the bonds having been issued in strict conformity thereto, it is apparent—as has been many times decided by this and other courts—that the rights of the bondholders are not the same as those of holders of ordinary coupon bonds. Their rights are, on the contrary, strictly measured by the terms of this statute, and they can claim nothing under general provisions of law inconsistent with it. They are to be paid certainly, but they are to be paid only in the manner and in the order as in this act provided. It contains the terms offered to the creditors of the city. They accepted those terms and thereby contracted to be bound by them.

As remarked by Judge Sawyer in *Kennedy v. Sacramento,* 10 Saw. 32: "The parties who surrendered their prior evidence of indebtedness and took these bonds took them under the provisions of this act, which was a contract made between the city and them that the bonds should be collected only in that particular mode, and no other; that there should be no other remedy for them—that the city should not be sued. The advantages which they obtained are subject to the provisions made for their payment, to the limitation put upon their remedy. The advantage to the city was that it should not be harassed by any other kind of suit, an extension of time for payment, and the reduction of the rate of interest. The advantage to the holders was the specific, certain, and permanent provision made for prompt payment in the future."

That was an action by the holder of overdue coupons detached from bonds issued under the act of 1858, in which he sought to recover a judgment against the city. The opinion of Judge Sawyer implicitly concedes—what indeed could not be denied—that the action would have been well brought if these bonds had been of the ordinary character, but he held that by reason of the peculiar provisions of the statute no action against the city could be maintained, and that the only remedy of the creditor was *man-*

*damus* against the treasurer to compel him to pay any money there might be in the sinking fund.

Besides this decision of the circuit court there have been numerous decisions of this court, all based upon the fundamental proposition that the act of 1858 embodies the contract between the city of Sacramento and the bondholders. (*Freehill v. Chamberlain*, 65 Cal. 603; *Meyer v. Brown*, 65 Cal. 583; *Davis v. Porter*, 66 Cal. 658; *Bates v. Porter*, 74 Cal. 224; *Bates v. Gerber*, 82 Cal. 550; *Davis v. Sacramento*, 82 Cal. 562.)

In *Freehill v. Chamberlain, supra,* which was *mandamus* to compel the treasurer to pay coupons more than four years past due, the statute of limitations was interposed as a defense, but it was held that, since the city could not be sued upon the coupons, the statute did not begin to run until the money applicable to the payment of the coupons was in the sinking fund, the implicit concession being that the coupons would have been barred if there had been any general obligation resting upon the city to pay.

*Davis v. Porter, supra,* was *mandamus* to compel the treasurer to pay overdue coupons with interest thereon.

The court did not in that case hold—as erroneously assumed on the former hearing of this case—that the coupons did not bear interest after maturity. On the contrary, it was expressly conceded for the purposes of the decision that the plaintiff was entitled to interest on the coupons after maturity, and the decision went altogether upon the ground that whether the city was or was not liable for interest it was at all events not the duty of the treasurer to pay anything more than the face of the coupons out of the interest and sinking fund.

The principle of the decision, clearly deducible from the whole opinion of Justice Thornton and the authorities cited, is, that the only legal duty of the treasurer enforceable by *mandamus* is to pay the principal of the written obligations of the city in the order of their maturity and presentation, and that the right of the bondholders to interest after maturity—conceding its existence—imposed no additional duty upon the treasurer. And, if this is true with respect to the coupons, it must be equally true with respect to the bonds themselves; for both by the general law

and the statutes of this state past due coupons, as well as past due bonds, bear interest in all cases where the obligation to pay is general and unqualified.

But, although in *Davis v. Porter, supra,* the question whether these coupons bore interest after maturity was left open and undecided, it was clearly and distinctly held in the latter cases of *Bates v. Gerber, supra,* and *Davis v. Sacramento, supra,* that they do not bear interest.

The case of *Bates v. Gerber, supra,* was exactly the same as *Davis v. Porter, supra*—*mandamus* to compel the treasurer to pay overdue coupons with accrued interest. Necessarily the plaintiff in that case had to contend for a reversal of *Davis v. Porter, supra,* but the court reaffirmed its former decision, and went much further. The treasurer in the Bates case had not only refused to pay the interest claimed to have accrued after maturity of the coupons, but had refused to pay the face of the coupons unless they should be surrendered as fully paid and satisfied, and it was earnestly contended on the part of the plaintiff that the coupons "drew interest from their maturity under the general law providing for such interest after maturity on all contracts, and that as the debt existed the treasurer had no right to impose, as a condition upon which he would pay the annual interest, that the coupons should be surrendered."

It is important to note carefully the answer which the court made to this proposition. They did not deny—and they could not have denied—that under the general law of the state past due coupons draw interest, but they held that the bonds from which these coupons were detached "were provided for by a special statute which provided a specific fund out of which they should be paid. The act provided for the payment of the principal and annual interest, and nothing more. (Citing statute.) There was no other fund out of which the interest demanded could have been paid, *and to have paid out a part of the fund on a liability not provided for or allowed by law would have been to divert a part of the fund from the purposes intended, and thereby to deprive other bondholders of their annual interest, and, perhaps, of their principal.*" The principal opinion from which this quotation is made contains more to the same effect,

and announces the conclusion that these coupons, by reason of the special provisions of the contract between the city and its creditors, do not draw interest after maturity. The concurring opinion of Justice Fox is much fuller, and, if possible, more emphatic in its assertion of the same proposition. In the subsequent case of *Davis v. Sacramento, supra,* which was an ordinary action against the city upon past due coupons, the same conclusion was reached, and the court in its opinion took occasion to distinguish the case of *Davis v. Yuba County,* 75 Cal. 452, in which interest was recovered on past due coupons upon the ground that the liability of Yuba county on her bonds was a general one, whereas in the case of the Sacramento bonds there was no liability except to pay out of a special fund.

These two cases last cited are strictly in point, and decisive of this case, because, as above remarked, there is no distinction to be made under the common law or under the statutes of California between past due coupons and overdue coupon bonds in respect to the right to collect, or the obligation to pay, interest. Obligations of either class draw interest where there is a general liability of the debtor to pay, but, when payment is to be made in a prescribed order out of a special fund, then the obligations payable out of such fund are to be paid in the amounts severally called for in their due order of payment, and not otherwise, and this for the reason that whenever payment of the specified amounts in the prescribed order is departed from one creditor is given what belongs to another—there is a robbing of Peter to pay Paul.

The passage which I have italicized in the above quotation from the opinion of the court in *Bates v. Gerber, supra,* states this proposition very forcibly, and it is the whole foundation of the decision in that case and the subsequent case of *Davis v. Sacramento, supra.*

Now, applying that proposition to the facts of this case, what do we find? Of the bonds and coupons issued under the act of 1858 each was an express written promise of the city of Sacramento to pay a definite sum of money at a certain date. The payments to be made according to these written promises may be tabulated as follows:

January 1, 1860,.................$96,000 ⎱ ...................6 per cent
  "    1, 1861,.................$96,000 ⎰ .............. ...    on
  "    1, 1862,.................$96,000 ⎰ .................$1,600,000
    and the same every
  year to and including
January 1, 1888,...............$96,000....................
February 1, 1888,...............$400,000................¼ of principal
January 1, 1889,...............$72,000 ⎱ ...................
  "    1, 1890,...............$72,000 ⎰ .............6 per cent
  "    1, 1891,...............$72,000 ⎰ .................  on
  "    1, 1892,...............$72,000 ⎰ .................$1,200,000
  "    1, 1893,...............$72,000 ⎰ ...................
February 1, 1894,...............$400,000................¼ of principal
January 1, 1894,...............$48,000 ⎱ ...................
  "    1, 1895,...............$48,000 ⎰ ...................6 per cent
  "    1, 1896,...............$48,000 ⎰ .................  on
  "    1, 1897,...............$48,000 ⎰ .................  $800,000
  "    1, 1898,...............$48,000 ⎰ ...................
February 1, 1898,...............$400,000................¼ of principal
January 1, 1899,............... $24,000 ⎱ ...................
  "    1, 1900,............... $24,000 ⎰ ...................6 per cent
  "    1, 1901,............... $24,000 ⎰ .................  on
  "    1, 1902,............... $24,000 ⎰ .................  $400,000
  "    1, 1903,............... $24,000 ⎰ ...................
February 1, 1903....,...........$400,000...........last ¼ of principal

All these sums were to be paid by the treasurer out of the sinking fund at the specified dates. From the fact that the petitioner's bonds, which are of the class that fell due on the first day of February, 1888, were still unpaid on the twelfth day of February, 1895, we must infer either that he had neglected to present them at the proper time and receive payment out of the funds provided for their redemption, or that there was no money in the special fund prior to the time of their presentation applicable to their payment.

The former supposition would be fatal to petitioner's claim to interest, and we are justified in assuming—what is indeed a notorious fact attested by the various cases above cited—that the fund provided for the payment of these obligations proved inadequate to their discharge as they fell due, and that the coupons payable in January, 1888, had only recently been taken up when payment of these bonds and interest was demanded—they being next in order of payment.

This being so, the position of petitioner makes it necessary that he should contend not only that the principal of his bonds was payable out of the special fund next after the coupons of 1888, but that he should have out of that same fund along with the principal of his bonds six per cent interest thereon for the years 1889, 1890, 1891, 1892, 1893, 1894, and 1895, to the ex-

clusion of the coupons (amounting to seventy-two thousand dollars annually), expressly made payable out of the same fund in 1889, 1890, 1891, etc., and four hundred thousand dollars principal of the bonds payable by their terms, February 1, 1893. Petitioner must, in other words, successfully maintain the proposition that he is entitled, by virtue of the general law, to receive money out of the special fund in preference to creditors to whose prior specific claims, founded on express written promises, the fund is appropriated by the act under which the bonds were issued.

And, if the petitioner can maintain this proposition as to his bonds, so can every other holder of the bonds of 1888, 1893, etc., and the result may be that somewhere in the twentieth century holders of the bonds of 1893 will be drawing interest up to date, while coupons belonging to this century will remain unpaid.

This, however, is the very thing which, according to the cases above quoted, cannot be done. The principle of those decisions, one and all, is that the act of 1858 embodies the contract between the city of Sacramento and the holders of these securities, and that nothing can be claimed by the latter under the general law relating to coupon bonds which is inconsistent with or would defeat the purposes of, or impair the rights secured by, the act of 1858.

All the bondholders have claims upon that fund—a fund insufficient to satisfy their claims as they mature—and the only thing to do is to pay them as the funds arise in the order of their maturity. To pay the holders of the bonds of 1888 interest which in any view they did not earn until after 1890, and leave unpaid the interest accrued on other bonds before that date, would be the grossest injustice. It would be giving to one set of bonds an enhanced value at the expense of other bonds, payment of which, both as to principal and interest, would be unduly postponed. It would violate the principle of our former decisions and take away vested rights of those who have dealt in these securities upon the faith of the doctrine so established. And besides the fact that those decisions are guarded by the principle of *stare decisis*, I have no doubt that they are correct, not only in the points decided, but in the reasons upon which they are based.

To my mind it is plain that the duty of the treasurer is to pay these bonds and coupons only at their face and only in the following order: First, the coupons in the order of their maturity to January 1, 1888; next, the bonds of February, 1888, in their serial order; next, the coupons of 1889, 1890, 1891, 1892, 1893, in order of maturity; next, the bonds of February, 1893, in their serial order, and so on to the end. In this way only can the behests of the statute be obeyed and the relative rights of the creditors be preserved. The only answer to this position is, that it would unjustly deprive the bondholders of interest on their overdue bonds—to which the obvious reply is, that the right to interest on overdue bonds is no more sacred than the right to interest on overdue coupons, and it has been held that no interest can be paid on overdue coupons without giving to one creditor what belongs to another. I think I have shown that the payment of interest on overdue bonds involves the same consequence.

There are other grounds from which the same conclusion—that these bonds, after maturity, do not bear interest—would seem to follow. In *Sawyer v. Colgan,* 102 Cal. 283, it was contended that bonds and coupons of the state bore interest after maturity by virtue of sections 1917 and 1918 of the Civil Code, but it was held that they do not apply to bonds of the state, because payment of interest after maturity is not a part of the contract, and the state cannot be bound without its consent. In *Hopkins v. Contra Costa County,* 106 Cal. 572, the same exception was made in favor of a county on the ground that counties are political subdivisions of the state. It is not easy to see why in any case a municipal corporation—a city and county—should not enjoy the same exemption. But in this case there is a special reason for holding that it obtains. These obligations of the city and county of Sacramento were authorized by an act, the first section of which declared that no action should be maintained upon them. (*Kennedy v. Sacramento, supra.*) The state, in other words, granted to the city and county the same immunity from suits that it enjoyed itself, and, so far as it had the power, brought the municipality within the reason and protection of the rule which exempts the state from the obligation to pay interest on its overdue coupons and bonds.

The judgment of the superior court should be affirmed.

Van Fleet, J., concurred.