[S. F. No. 3846.   Department One.—January 3, 1907.]

ALBERT MEYER, Respondent, v. CITY AND COUNTY OF SAN FRANCISCO, Appellant.

DUPONT-STREET BONDS—SPECIAL FUND—JUDGMENT AGAINST CITY NOT SUPPORTED BY COMPLAINT—FAILURE TO PAY BONDS.—The Dupont-Street bonds issued by the city and county of San Francisco under

the act of March 23, 1876, for the widening of Dupont Street, were payable only out of a fund to be raised by taxation of lands within a specified district declared to be benefited. All claims against the city were waived, and it cannot be held liable to a personal general judgment. Where no breach of duty was alleged in an action against the city except failure to pay the bonds, the complaint cannot support a judgment against the city.

ID.—FUND NOT ALLEGED NOT PRESUMED—MANDAMUS NOT SUPPORTED.—Where the complaint did not allege the existence of a fund sufficient to pay the bonds, such fund cannot be presumed; but the complaint having failed to allege an existing duty and a failure to perform it on demand, cannot support a *mandamus*, which only lies to compel the performance of an act which the law especially enjoins as duty resulting from an office, trust, or station.

ID.—RIGHT OF ACTION TO ESTABLISH BONDS—PREVENTION OF BAR 'OF STATUTE—PRAYER OF COMPLAINT DISREGARDED.—Though the plaintiff has no right of action for a general judgment against the city, or for a writ of mandate, yet he is entitled to maintain the action in order to establish the bonds, and to prevent the bar of the statute of limitations thereupon; and a judgment may be rendered establishing the debt for that purpose. The prayer of the complaint for a general judgment against the city may be disregarded as not measuring the plaintiff's rights; and since the complaint entitles him to some relief, a general demurrer thereto was properly overruled.

ID.—ERRONEOUS JUDGMENT UPON PLEADINGS—INTEREST AFTER MATURITY NOT ALLOWABLE.—Not only was the general judgment against the city erroneous, but it was further erroneous in rendering judgment upon the bonds for interest after maturity, for which the statute does not provide. The provision is only for coupons to be attached for each year's interest accruing up to the time of maturity; and no coupons being attached for interest accruing after maturity, the statute must be understood as intending that no such interest was to accrue. Section 1917 of the Civil Code does not apply.

ID.—OVERISSUE OF BONDS—VALIDITY—INSUFFICIENT DEFENSE.—In case of an overissue of the bonds, they would all be valid except those issued after the limit was reached; and a defense alleging such overissue without alleging that plaintiff's bonds were included in the overissue is insufficient.

ID.—EFFECT OF LIMITED JUDGMENT—PARTIES NOT AFFECTED—RIGHTS OF PROPERTY-OWNERS.—The limited judgment establishing the bonds and removing the bar of the statute may be rendered without making the property-owners parties; but a judgment having that effect against the city alone would not bind the owners of the property nor estop them from showing that the bonds were invalid or not enforceable for other reasons.

ID.—QUESTIONS AFFECTING PROPERTY-OWNERS.—The questions whether in view of the recitals on the face of the bonds the defense of overissue can be raised against the plaintiff, and whether judg-

ments enjoining the tax-collector from collecting the tax against certain property-owners, bind the city and the bondholders who were not parties thereto, are questions which should not be determined in the absence of the property-owners as parties.

ID.—REVERSAL OF JUDGMENT—PARTIES.—Where the case is remanded by reason of the erroneous judgment, the property-owners should be made parties, if plaintiff desires to attempt in this action to obtain judgment for any relief other than the special relief grantable against the city alone.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

Franklin K. Lane, City Attorney, Percy V. Long, City Attorney, D. Freidenrich, and Naphtaly, Freidenrich & Ackerman, for Appellant.

Rosenbaum & Scheeline, for Respondent.

SHAW, J.—This is an action to recover of the defendant the amount due upon thirteen Dupont-Street bonds, issued by the defendant and held by the plaintiff. A general demurrer to the complaint was overruled by the court below, the defendant answered, and thereupon, upon motion of plaintiff, judgment was entered for the plaintiff upon the pleadings, from which the defendant appeals.

The complaint alleges the execution of the bonds, sets forth one of them *verbatim,* states that the others are of the same tenor and effect, differing only in the number, avers that the plaintiff is the holder of the bonds, and that the sum of money named in the bonds is due from the defendant to the plaintiff and is unpaid, although payment of the same has been demanded. The bonds became due, according to their terms, on January 1, 1897. The suit was begun on December 31, 1900. The prayer is for an ordinary judgment against the defendant for the amount of the bonds sued on and for costs of the action. The bonds state on their face that they were issued under the provisions of the act of March 23, 1876, for the widening of Dupont Street, and that they were to be paid out of the fund to be raised by taxation as provided in that act. The provisions of the act referred to are thus made a

part of each bond. The fund in question was to be raised by means of a special tax, to be levied annually for twenty years upon the lands within a certain district described in the act, in a sufficient amount each year to pay the annual interest on the bonds and one twentieth of the principal thereof. Separate annual levies were to be made, one for the interest and the other for the annual installment of the principal. Section 22 of the act is set forth in full in each bond, with the statement that the bond is issued by the city and taken by the holder thereof under the conditions therein expressed. This section declares in substance that the completion of the work of widening the street as provided in the act, should be deemed an acceptance by the landowners of the lien created by the act for the tax to be levied, and should operate as a waiver by the holders of the bonds of all future claim upon the city and county of San Francisco for any part of the debt created by the bond. The record is silent as to the date of the completion of the work provided in the act, but as no question is raised concerning it, we will assume that it was completed before the suit was begun.

The effect of these provisions and conditions is that there is no obligation on the part of the city and county of San Francisco to pay the bonds, and that the amount named therein never became due from the defendant as alleged. The bonds were to be paid out of a special fund, to be raised by certain city officers by means of a special tax upon the lands within a specified district, declared to be benefited by the improvements. All claims against the city for any part of the debt was waived, and the debt was due out of the funds to be raised in accordance with the provisions of the act, and not otherwise. It never became a general obligation of the city, to be enforced by a personal judgment against it, such as that prayed for in the complaint.

The judgment so obtained cannot be upheld under the allegations of the complaint. *Mandamus* lies to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. To authorize a writ, the complaint must show an existing duty and a failure to perform the same on demand. (*People* v. *Romero*, 18 Cal. 91; *Crandall* v. *Amador Co.*, 20 Cal. 75; *Oroville etc. Co.* v. *Plumas Co.*, 37 Cal. 363.) No breach of duty is alleged

except the failure to pay the bonds. Under the provisions of the act, that duty could not arise until there had been sufficient funds raised by the special tax applicable to these bonds to pay the same. (*Cramer* v. *Sacramento,* 18 Cal. 384.) This fund may or may not have been raised. It is not alleged, and it is not to be presumed.

But although no action could be maintained to recover a general judgment against the city for the money due on the bonds, and the complaint is insufficient to authorize a writ of *mandamus,* conceding that a *mandamus* suit to enforce payment of the bonds would lie against the city in any case, we think that the plaintiff may nevertheless maintain an action against the city on the bonds, not to enforce payment thereof, but to establish and perpetuate them as a claim upon the funds to be raised under the act, and to prevent the bar of the statute of limitations. At the time the action was begun but one day remained of the period of limitation. By the expiration of that period the plaintiff would have been barred forever of all right to enforce payment of the bonds, which the demurrer admits to be valid and unpaid. The delay was not the fault of the plaintiff. Circumstances might exist under which it would not be the fault of the defendant or its officers, and in which plaintiff could not force payment by *mandamus,*—as, for instance, if the officers, although exercising reasonable diligence, had been unable to collect the tax until after the period of limitation had run. In such a case the plaintiff would be practically without remedy if he could not maintain an action to prevent the running of the statute against him. Justice requires that he shall have some means of preventing his claim from becoming outlawed. No better or more appropriate remedy can be suggested than that of an action of the character above indicated.

In this conclusion we are supported by the example of the federal courts in a somewhat analogous case. Those courts have no original jurisdiction to issue writs of *mandamus.* The writ can only issue after judgment and in aid of its enforcement and execution. (*United States* v. *County Court,* 122 U. S. 306, [7 Sup. Ct. 1171] ; *Labette Co.* v. *Moulton,* 112 U. S. 217, [5 Sup. Ct. 108].) With respect to bonds which constitute an obligation against a portion only of the county or city, and which do not constitute a general obligation

against such corporation, those courts found themselves in somewhat of a dilemma. The bonds in question there, as here, purported to be issued by the city, or county, respectively, but it was held that they did not constitute a general obligation against the obligor sufficient to authorize a general judgment thereon. In those courts, if no judgment could be obtained, there could be no *mandamus,* and a bondholder would be without remedy therein to enforce his obligation. In this situation it was said "the holder of these bonds cannot have any remedy in the federal courts unless he is entitled to recover a judgment thereon and to enforce such judgment, if necessary, by *mandamus.* . . . It seems to us that the provision that the bonds shall be issued in the name of the county implies a liability on the part of the county to be sued, so far as is necessary to give effect to the rights of the holders of the bonds. . . . This is to be effected by the nature of the judgment we render, which is not a personal judgment against the county, but only a judgment judicially establishing the plaintiff's debt." (*Jordan* v. *Cass Co.,* 3 Dill. 185, 13 Fed. Cas. No. 7517, p. 1088.) This case was followed by *Cass·Co.* v. *Johnson,* 98 U. S. 360; *Davenport* v. *Dodge Co.,* 105 U. S. 237; and *Mather* v. *San Francisco,* 115 Fed. 37. The latter was an action upon some of the Dupont-Street bonds, of which the bonds in suit in this case at bar form a part. Upon similar reasoning we can say that the provision that the bonds here involved should be issued in the name of the city and county implies that the city and county can be sued when necessary to preserve the plaintiff's rights and prevent the bar of the statute of limitations, and that in such action a judgment can be given establishing the debt for that purpose. The prayer of the complaint may be disregarded. It does not measure the plaintiff's rights. The complaint entitles him to some relief, and the demurrer was therefore properly overruled.

We are of the opinion, however, that in giving judgment on the pleadings the court improperly allowed the interest which accrued on the bonds after their maturity. The act in question provided a scheme for a public improvement, the cost of which was to be paid by a special assessment upon the lands in the district specially benefited thereby. For this purpose the assessment district was created, and upon the

real property therein there was imposed the burden of such payment. This burden was laid by the defendant without the consent of the owners of the property. The legislature has power to do this for the purpose of defraying the expense of public improvements, but such statutes are to be construed in favor of the property-owner, at least to this extent, that the burden imposed cannot exceed that which the terms of the statute, either expressly or by fair implication, authorize. This statute not only does not expressly authorize a charge of interest on the bonds after their maturity, but its provisions fairly imply that such interest was not to be paid.

It provides that the bonds should be "payable in twenty years from their date, unless sooner redeemed, as in this act provided," and that they should "bear interest at the rate of seven per cent per annum, payable semi-annually." This language does not necessarily imply that interest is to run after maturity. Coupons for the annual interest, consecutively numbered, were to be attached to each bond in such manner as to be easily removed. It was further provided that a tax should be levied annually upon the lands in the district to pay the interest as it matured, and that the money thus raised was "to be paid out by said treasurer only in payment of the coupons attached to said bonds, as the same from time to time become due," and that at the same time and in the same manner there should be annually levied a tax sufficient to pay one twentieth of the principal, to constitute a sinking fund and which should be paid out only in redeeming the bonds. Provision was made for calls for bonds to be paid in the order of issuance, whenever there was on hand ten thousand dollars or more of the sinking fund. The twenty annual levies thus provided for, if made and collected as required, would fully pay the entire amount of principal and interest of the bonds. We think the provision of the act requiring the interest coupons to be attached to the bonds is to be understood as meaning that coupons were to be attached for each year's interest accruing up to the time of their maturity. There is no provision for the attaching of any coupons for interest accruing after maturity. And in view of the rules of construction applicable to such acts we must hold that there is no authority either to issue such coupons or to attach them to the bonds. The provision that the levy

made for the payment of interest was to be applied "only"
to the payment of the coupons implies that no tax was in-
tended to be levied for any interest except that represented
by the coupons, and hence that it was not to be levied for
interest accruing after maturity. There being no provision
for the payment of any interest accruing after maturity, the
act must be understood as intending that no such interest
was to accrue. The case of *Kendall* v. *Porter,* 120 Cal. 108,
[45 Pac. 333, 52 Pac. 143], is cited to the contrary. We
think, however, that the act there construed is easily distin-
guishable from that here involved. The bonds there under
consideration were the general bonds of the city of Sacra-
mento, and both the principal and the interest were to be
paid out of a certain fund consisting of a certain proportion
of the general annual revenues of the city. This revenue
would, of course, continue indefinitely, after the maturity of
the bonds as well as before. There was not in that case sep-
arate taxes for the interest and the principal, to be applied
exclusively for the purposes for which it was levied, nor a
specified number of levies to be made for a specified number
of years. There was no certainty that the fund provided in
that case from the annual revenues of the city would be
sufficient to pay the bonds at or before their maturity, as is
the case here. The court held that the act not only failed
to show an intent to terminate the interest upon the maturity
of the bonds, but that it indicated with some clearness an
intent that they should bear interest until paid. The pro-
visions and circumstances above noted, which do not exist
here, are sufficient in our opinion to distinguish that case from
the present one and to require the contrary conclusion as
to its effect and purport. The present case is more like those
of *Bates* v. *Gerber,* 82 Cal. 550, [22 Pac. 1115], and *Davis*
v. *Sacramento,* 82 Cal. 562, [22 Pac. 1118], which involved
the interest on the coupons which were attached to the bonds
in question in *Kendall* v. *Porter,* 120 Cal. 108, [45 Pac. 333,
52 Pac. 143]. It was held in those cases that the interest
coupons did not bear interest after maturity. The court said:
"The act provided for the payment of the principal and an-
nual interest and nothing more. There was no other fund out
of which the interest demanded could have been paid." So
here the act provides that a fund should be raised annually

during the time the bonds were maturing, but no longer, and there is no provision for the payment of subsequent interest. It was said in *Bates* v. *Gerber,* 82 Cal. 550, [22 Pac. 1115], and *Kendall* v. *Porter,* 120 Cal. 108; [45 Pac. 333, 52 Pac. 143], that "the statute is the measure of the bondholders' rights." It is also the measure of the property-owners' burden. No provision being made for the payment of any further amount than that of the principal and interest accruing up to maturity, no further interest can be allowed.

Section 1917 of the Civil Code, which provides that "Unless there is an express contract in writing, fixing a different rate, interest is payable on all moneys at the rate of seven per cent per annum, after they become due on any instrument of writing," does not apply here, because, as we construe the act of 1876, it does by fair intendment declare that interest shall not be payable after maturity.

The answer attempts to aver that there was an unauthorized overissue of the bonds. It does not allege any facts showing that the plaintiff's bonds constituted a part of this alleged overissue. The statute appears to contemplate that bonds might be issued at different times until the aggregate issue equaled the authorized amount. In such a case, the bonds would all be valid, except those issued after the limit was reached. The question is raised as to whether, in view of the recitals on the face of the bonds, this defense can be made without an allegation that plaintiff is not a *bona fide* holder. This question, we think, ought not to be decided in the absence of the property-owners, or some one of them at least, who might represent them all. Neither the city nor its officers have any substantial interest in the question. It is the property-owners who must bear the additional burden, if any there be, and none of them are parties to the action.

It is also alleged that certain property-owners have obtained judgments, which remain in full force, perpetually enjoining the tax-collector of the city and county, and his successors in office, from collecting from the lands owned by them any tax levied under the act, that the levies provided for in the act were regularly made each year for the twenty years, as required, upon all the lands in the district, and that the tax has been paid upon all of said lands, except that levied upon the lands protected by the said judgments. It is claimed that these

judgments bind both the city and the bondholders, neither of whom were parties to the actions in which the judgments were rendered. This question is also one in which the property-owners concerned are vitally interested, and which should not be decided until they have an opportunity to be heard. When the case is remanded these property-owners should be made parties to the action, if the plaintiff desires to attempt in this action to obtain judgment for any relief other than to establish the debt and prevent the bar of the statute of limitations. We are satisfied that he can obtain a judgment of this character without making the property-owners parties, but this rule can be allowed only with the qualification that a judgment against the city alone, which merely has that effect, would not bind the owners of the property, nor estop them from showing that the bonds were invalid, or not enforceable, for other reasons.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.