[Civ. No. 2486. Fourth Appellate District.—December 11, 1940.]

JOHN BULLARD, Appellant, v. COUNTY OF RIVERSIDE, DRAINAGE DISTRICT IMPROVEMENT No. 3, et al., Respondents.

R. J. Welch, Jr., and H. M. Dougherty for Appellant.

Earl Redwine, District Attorney, for Respondents.

MARKS, J.—Plaintiff brought this action in declaratory relief to determine his right to recover the principal and accruing interest of two bonds for $1,000 each issued by the County of Riverside, Drainage District Improvement No. 3. The case was heard on an agreed statement of facts and judgment was rendered for defendants. This appeal followed.

The County of Riverside, Drainage District Improvement No. 3 (hereinafter called The District) was organized

under the Drainage District Improvement Act of 1903 (Stats. 1903, p. 354, as amended Stats. 1915, p. 359) hereinafter called the Improvement Act of 1903, and its bonds were issued on the 8th day of November, 1920, after the effective date of the Drainage District Improvement Act of 1919 (Stats. 1919, p. 731 [Deering's Gen. Laws, 1937, Act 2203]), hereinafter called the Improvement Act of 1919. While it is not definitely stated in the stipulation, it is rather apparent that The District, while organized under the earlier act, was not completed at the time the act of 1919 went into effect and therefore is partially controlled by some of the provisions of the later act.

The bonds of The District matured on November 8, 1935, when plaintiff presented his bonds for payment. Probably the interest was paid in full to that date, but payment of the principal was refused because there was not sufficient money on hand to retire them. They were also unsuccessfully presented for payment on several subsequent occasions. It is agreed that the principal and interest on all outstanding bonds, other than the interest accruing after maturity on two held by plaintiff, had been paid in full at the date of the stipulation. After the action was filed sufficient money was received to pay the principal of the bonds. This was paid on July 14, 1939, with the stipulation that acceptance of the principal would have no effect on plaintiff's right to demand interest accruing between November 8, 1935, their due date, and July 14, 1939, the date of the principal payment.

It was further stipulated that after all the principal of all of the bonds, together with interest to maturity, had been paid there had accumulated from delinquent installment payments in the special fund out of which the interest could be paid, the sum of $374.35 and further that it was believed that there were outstanding assessments which, if paid, would be sufficient to pay in full the interest claimed by plaintiff.

The bonds had attached to them interest coupons the exact form of which is not in the record. These coupons matured semi-annually, the last becoming due on November 8, 1935. The bonds contained the following provisions:

"Under and by virtue of the Drainage District Improvement Act of 1903, an Act of the Legislature of the State of California (and Acts amendatory thereof), the County of

Riverside, State of California, will, out of the fund herein-
after designated, at the office of the Treasurer of said County,
on the 8th day of November, 1935, pay to the bearer the sum
of

ONE THOUSAND DOLLARS

($1000.00) in gold coin of the United States of America with
interest thereon in like gold coin at the rate of six per cent
per annum payable as hereinafter specified.

"This bond is payable out of Drainage District Improve-
ment Fund No. 3 exclusively, as the same appears on the
books of the Treasurer of said county, and neither said county
nor any officer thereof is holden for its payment otherwise."

The Improvement Act of 1903 provided for the organiza-
tion of improvement districts and set up the machinery for
making the contemplated improvements, the issuance of bonds
to pay for the work, the levy of assessments to pay the bonds
and accruing interest. It also provided for the levy of taxes
on the property within the district to insure the payment
of the interest and the retirement of the bonds, when due,
and to provide a maintenance fund for maintaining the
works in the district. The board of supervisors was made
the governing body of the district.

Section 9 of that act provides for the assessment on the
various parcels of land within the district of the costs of the
improvements, the damages to property and incidental ex-
penses, the total of which is to be evidenced by the total of
the bonds issued. When the assessments are approved they
become liens on the various parcels of land within the dis-
trict. Each instalment of each assessment is made payable
on October 1st of each year over the period in which the
payments are made collectible. In this section no provision
is made for the collection of anything more than the exact
amount of each assessment and there is nothing to indicate
that interest payments are contemplated after the due date
of the bonds and the last interest coupons attached to them.

In section 8e of the act we find the following:

"A special fund to be named 'Drainage District Improve-
ment Fund No. . . . ' (the number to be that of the dis-
trict), for the discharge and payment of such bonds and in-
terest thereon and for the payment of the incidental costs
and expenses of the organization of any district organized
under this act, shall be constituted from funds to be derived

from the collection of assessments levied against lands found to be benefited by improvements contemplated to be constructed as specified herein. There shall be each year, at the time of the levy of the general levy of state and county taxes, levied against and upon all lands within said Drainage Improvement District No. . . . (being the district established and as bounded in the order ordering the work to be done) a special assessment upon the lands found to be benefited by such improvement *in an amount clearly sufficient to pay all the principal which has and will become due and all interest which has or will become payable on said bonds in any one year,* and to maintain and repair the works and improvements therein before the proceeds of another assessment levied at the time of the general tax levy of the state and county can be made available for the payment of such bonds and such maintenance and repairs.'' (Emphasis ours.)

It is therefore apparent that the Improvement Act of 1903 provided two sources of revenue to pay the principal and interest on the bonds as they became due. The first was by the assessment on each parcel of land in The District provided for in section 9. The second was by the annual assessment and tax to be levied under the provisions of section 8e which we have just quoted. In this latter respect this act differs from many of the local improvement acts in effect in the state.

It is rather clear from the provisions of the act that the legislature intended to provide the machinery for raising sufficient funds to pay the principal and interest on the bonds as they became due and did not contemplate that there would be any defaults in any of these payments so that no question should arise as to interest on any bond after maturity. As the levying of the annual assessment provided for in section 8e to furnish funds to pay the principal and interest accruing on the bonds as well as the maintenance and repair of the works of The District is made a duty to be performed, it is probable that a bondholder could have compelled the levy of such an assessment if the revenues under section 9 of the act failed to provide sufficient money to pay the principal and interest as they became due.

While it is rather clear that the Improvement Act of 1903 did not contemplate the payment of any interest on the bonds after their due date, the situation giving rise to this litiga-

tion was created by the adoption of the Improvement Act of 1919 and some of its amendments. Section 27 of that act provides as follows:

"This act shall supersede and repeal an act of the legislature of the state of California approved March 21, 1903, and amendments thereto entitled 'An act to promote the drainage of wet, swamp and overflowed lands, and to promote the public health in the communities in which they lie'; provided, however, that nothing contained herein shall operate to invalidate any proceedings heretofore taken under the provisions of said act approved March 21, 1903, as amended; provided, further, that any district formed under the provisions of the said act of 1903, but not completed at the time this act takes effect, shall be completed, accepted by the board of supervisors and bonds shall be issued in accordance with the provisions of the said act of 1903, but may be issued for all the purposes specified in this act including expenditures made to procure rights of way whether inside of such drainage district or outside thereof, where the board finds it necessary for such district, but such district shall thereafter be maintained under the provisions of section twenty-four of this act. Otherwise this act is not intended to supersede or repeal any other act for the construction of work for drainage purposes, but is intended as an independent and alternative act of the legislature of the state of California."

It is stipulated that the bonds in question here were issued under the Improvement Act of 1903 and that those bonds were issued and dated November 8, 1920, over a year after the Improvement Act of 1919 went into effect. As we are not informed when the proceedings to organize The District were started and as we must presume that a duty laid on public officials was performed according to law, we must presume that the proceedings to organize The District were instituted prior to the effective date of the Improvement Act of 1919, but were not completed at the time that act took effect, in the absence of evidence to the contrary. Therefore, under section 27 of the Improvement Act of 1919, the provisions of the Improvement Act of 1903 would control here as to the issuance of the bonds, the assessments to pay them, and other such provisions. Only the provisions of section 24 of the Improvement Act of 1919 as to the *mainte-*

*nance* of the works of The District would be operative and controlling. As we have here no question of maintenance, the provisions of the Improvement Act of 1903 must determine the issue presented.

We believe that the case of *Meyer* v. *City and County of San Francisco*, 150 Cal. 131 [88 Pac. 722, 10 L. R. A. (N. S.) 110], must be controlling here. The facts are identical with those of the instant case except in unimportant particulars so that the reasoning and conclusions there must be followed. In deciding the precise question now before us, the Supreme Court there said:

"We are of the opinion, however, that in giving judgment on the pleadings the court improperly allowed the interest which accrued on the bonds after their maturity. The act in question provided a scheme for a public improvement, the cost of which was to be paid by a special assessment upon the lands in the district specially benefited thereby. For this purpose the assessment district was created, and upon the real property therein there was imposed the burden of such payment. This burden was laid by the defendant without the consent of the owners of the property. The legislature has power to do this for the purpose of defraying the expense of public improvements, but such statutes are to be construed in favor of the property-owner, at least to this extent, that the burden imposed cannot exceed that which the terms of the statute, either expressly or by fair implications, authorize. This statute not only does not expressly authorize a charge of interest on the bonds after their maturity, but its provisions fairly imply that such interest was not to be paid. . . . There being no provision for the payment of any interest accruing after maturity, the act must be understood as intending that no such interest was to accrue."

Plaintiff relies upon such cases as *Freehill* v. *Chamberlain*, 65 Cal. 603 [4 Pac. 646], *Davis* v. *Porter*, 66 Cal. 658 [6 Pac. 746], *Bates* v. *Gerber*, 82 Cal. 550 [22 Pac. 1115], and *Kendall* v. *Porter*, 120 Cal. 106 [45 Pac. 333, 52 Pac. 143], as sustaining his position. These cases involved various questions arising under refunding bonds of the city of Sacramento issued under the provisions of an act approved April 25, 1858 (Stats. 1858, p. 267). Certain of the revenue of Sacramento was pledged to pay the bonds without an express limitation on the length of time that revenue could be used

for that purpose. The Supreme Court held that such lack of limitation together with the lack of any assurance that the pledged revenue would pay the principal and interest on the bonds when due was sufficient evidence of an intent on the part of the legislature that the revenue be used to retire the bonds until they were actually paid and to permit the bondholders to receive interest on the bonds after their maturity and until their payment in full. These cases were sufficiently distinguished in *Meyer* v. *City and County of San Francisco, supra,* so as to make unnecessary their further consideration here.

Plaintiff argues that as section 23 of the Improvement Act of 1919 required the County of Riverside annually to transfer into The District funds, sufficient money with which to pay the interest and principal of the bonds falling due during the year, if The District funds were insufficient for that purpose, the county is responsible for failure to perform that duty and an intention is manifest, that interest be paid to the bondholders until the bonds are paid. While there are several answers to this contention it is only necessary to mention two. First, the provisions of bonds themselves negative any idea of such conclusion. Second, we have already indicated our opinion that under the facts before us the provisions of the Improvement Act of 1903 control on questions of the issuance and payment of the bonds and that the Improvement Act of 1919 has nothing to do with those questions.

The other questions raised by plaintiff are sufficiently answered by what we have already said and by *Meyer* v. *City and County of San Francisco, supra.*

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 6, 1941. Curtis, J., Houser, J., and Carter, J., voted for a hearing.