[Sac. No. 5616. In Bank. July 10, 1944.]

JAMES IRVINE, Appellant, v. RECLAMATION DISTRICT NO. 108 et al., Respondents.

[Sac. No. 5610. In Bank. July 10, 1944.]

REED J. BEKINS et al., as Trustees etc., Appellants, v. RECLAMATION DISTRICT NO. 1500 et al., Respondents.

W. Coburn Cook and A. A. Tiscornia for Appellants.

Loyd E. Hewitt, District Attorney (Sutter), Ralph Rutledge, District Attorney (Colusa), and Downey, Brand & Seymour for Respondents.

CARTER, J.—These consolidated actions present the question of the liability of reclamation districts for interest on their bonds and interest coupons after maturity. The Irvine case was before this court on a prior occasion but the issue was not passed upon. (*Irvine* v. *Gibson*, 19 Cal.2d 14 [118 P.2d 812].)

In the Irvine case it is charged in the complaint that the defendant Reclamation District No. 108, was organized under

the general reclamation law of 1868; and issued on January 1, 1925, bonds of the denomination of $1,000 each in the total principal sum of $3,142,000, bearing interest at 6 per cent per annum and having attached thereto interest coupons for semiannual payment of interest. The bonds matured serially to January 1, 1943. Plaintiff is the holder of $31,000 principal of such bonds, 15 of which matured on January 1, 1935, and 16 on January 1, 1936, the principal of which was not paid when plaintiff commenced his action; the interest was not paid for the last half of 1935 on the 16 bonds. Since the commencement of the action there has been paid the principal of the 15 bonds and $650 on each of the 16 bonds together with $19.50 on each of the interest coupons for the last half of 1936. Prior to the commencement of the action and on October 6, 1938, plaintiff demanded payment of the bonds which was refused, but the bonds were registered by the treasurer. He demands interest at 7 per cent per annum on the principal and the unpaid interest coupons from maturity.

In the Bekins case plaintiff alleges that defendant Reclamation District No. 1500, was created by a special act of the Legislature in 1913 (Stats. 1913, p. 130), and issued bonds in 1920, having interest coupons bearing 6 per cent payable semiannually attached thereto. Plaintiff owns three bonds of this district maturing January 1, 1936, and two maturing January 1, 1938. Payment of said bonds was refused. Later the principal and interest coupons on said bonds were paid, but payment of interest on the principal since maturity was refused. Plaintiff claims such interest on a 7 per cent rate basis.

Demurrers were sustained to the complaints in both actions and judgments entered that plaintiffs take nothing.

It appears that defendant district in the Irvine action was organized prior to 1913, and thereafter Reclamation District No. 729 was consolidated therewith and reorganized, which consolidation was approved by the Legislature, and the Political Code provisions on reclamation districts made applicable. (Stats. 1913, ch. 62, p. 62.) The reorganization was again ratified and validated in 1915, 1917, and 1919 (Stats. 1915, p. 559; Stats. 1917, p. 1219; Stats. 1919, p. 357.)

The course of the decisions in this state upon the two questions of whether or not government bonds bear interest after

maturity and whether the interest coupons bear interest after maturity is devious and confusing. In *Beals* v. *Board of Supervisors,* 28 Cal. 449, an indebtedness of one county was imposed on another by the Legislature. No bonds were involved. The debtor county issued a warrant to the creditor county, which upon presentation was refused payment because of lack of funds. Demand of an assignee for the payment of interest on the warrant was refused. The court denied recovery of interest because the statute imposing the obligation did not mention interest, there was no express contract for interest, no rule of law independent of statute required interest, and a general statute authorizing interest on warrants should not be applied because the statute imposing the debt fixed the obligation as only the principal and provided for a special fund out of which it was to be paid. Relying upon the Beals case, the rule was announced in *Soher* v. *Supervisors of Calaveras Co.,* 39 Cal. 134, that where no provision is made in the statute under which the bonds are issued for interest after maturity on county bonds, none is payable. ▮▮▮ In *Kendall* v. *Porter,* 120 Cal. 106, 110 [45 P. 333, 52 P. 143], the Beals case was distinguished on the ground that the obligation was legislatively imposed and was not a contract like a bond. The Soher case was disapproved, because it was based on a false assumption of the holding in the Beals case. The Kendall case involved municipal bonds and stated the rule to be that:

" 'The statute being thus the measure of the bondholders' rights, it becomes important to consider its provisions in relation to the interest upon the bonds, for the bondholders will be entitled to just such interest and no other as by a fair intendment the statute provides that they shall have . . .' "
It would appear from that rule that no interest is payable after maturity unless the statute so provides. The statute there involved did not expressly provide one way or the other and the court went on to say: "It is a rule so general and well established that it is not even controverted by respondents in this case that interest bearing coupon bonds continue to bear interest *after* their maturity. . . .

" 'To take these bonds out of the operation of this rule *there must be pointed out some language in the statute evincive of an intent so to do, some declaration which will justify the court in saying that it was designed that the interest should*

*cease upon the maturity of the bond. . . .'* " (Italics added.) It therefore appears that the court intended to announce the general rule, that where government bonds are issued which provide for interest, the interest continues after maturity, even though there are interest coupons attached thereto covering only the period before maturity, unless there is some provision in the authorizing statute evincing an intent that they should not bear such interest. That view is further fortified by the dissenting opinion of Chief Justice Beatty in which he cites the cases of *Sawyer* v. *Colgan,* 102 Cal. 283 [36 P. 580, 834] and *Hopkins* v. *Contra Costa County,* 106 Cal. 566 [39 P. 933]. Those cases must be deemed to have been overruled by the Kendall case. Moreover, the Hopkins case may be distinguished in that it merely announced the general rule that interest does not run on a claim against the state in the absence of a statute imposing it and that general provisions for interest (section 1917 of the Civil Code then provided for interest at 7 per cent on moneys after they became due unless the contract was to the contrary, and section 3287 allowed interest on damages which were certain) do not apply to the state, whereas in the case of bonds being issued that do bear interest, it may yet be said the interest continues after maturity. However, the Sawyer case is clearly contrary to the Kendall case. The Kendall case was followed by *Meyer* v. *City & County of San Francisco,* 150 Cal. 131 [88 P. 722, 10 L.R.A.N.S. 110], where it was held that bonds for street improvements to be paid by special assessments did not bear interest after maturity because the authorizing statute should not be so construed. The court seemed impressed by the special assessment feature as the sole source of payment of the bonds, and that there would not be sufficient funds raised thereby to pay post maturity interest. That is not wholly persuasive because it may be that, although the assessment was intended to be sufficient to pay the principal, by virtue of delinquencies, it might not be. It may have some bearing as indicating the legislative intent with reference to interest continuing. Although the Meyer case purports to distinguish the Kendall case it is fundamentally opposed to it for it does not accept the rule that interest on bonds continues after maturity unless the statute evinces a contrary intent. Rather it assumes such interest does not accrue unless the authorizing statutes expressly so provide.

474

■ There are cases which hold generally that interest will not run against the government on its obligations in the absence of special statutory authority and that general statutes providing for interest are not applicable. (See *McNutt* v. *City of Los Angeles,* 187 Cal. 245 [201 P. 592]; action for damages for change in grade of street; *Savings etc. Soc.* v. *San Francisco,* 131 Cal. 356 [63 P. 665]; *Columbia Sav. Bank* v. *Los Angeles County,* 137 Cal. 467 [70 P. 308]; *Miller* v. *County of Kern,* 150 Cal. 797 [90 P. 119]; *Spencer* v. *City of Los Angeles,* 180 Cal. 103 [179 P. 163]; *Kern Valley W. Co.* v. *County of Kern,* 150 Cal. 801 [90 P. 121]; see *Lockhart* v. *Wolden,* 17 Cal.2d 628, 633 [111 P.2d 319]; *United Taxpayers Co.* v. *San Francisco,* 55 Cal.App. 239 [203 P. 120]; *Birch* v. *Board of Supervisors,* 191 Cal. 235 [215 P. 903]; probably the weight of authority is to the contrary; see 57 A.L.R. 357, 76 Id. 1012, 112 Id. 1183; actions to recover taxes illegally levied; *Engebretson* v. *City of San Diego,* 185 Cal. 475 [197 P. 651]; *Los Angeles Dredging Co.* v. *Long Beach,* 210 Cal. 348 [291 P. 839, 71 A.L.R. 161]; *Reclamation D. No. 1500* v. *Reclamation Bd.,* 197 Cal. 482 [241 P. 552]; *Powell* v. *City of Los Angeles,* 95 Cal.App. 151 [272 P. 336]; see *Sheehan* v. *Board of Police Commrs.,* 188 Cal. 525 [206 P. 70].) But there is a clear distinction between an obligation of the government which makes no mention of interest and an obligation such as a bond where the authorizing law and the bond itself provide for interest. (See *City of Indianola* v. *Gates,* 181 Miss. 145 [179 So. 284].) Even if we accept the general proposition that government obligations do not bear interest in the absence of statutory provision therefor, where the statute states that the bond shall bear interest the only reasonable implication is that it shall continue to bear interest after maturity. ■ Government bonds are ordinarily classed with negotiable instruments and pass freely from hand to hand. They are the solemn and binding obligation of the government. There is little doubt that it is the understanding of the purchasers of such bonds that the interest does not cease when the bond matures and the maker defaults. ■ The interest accruing after maturity is not accurately speaking damages, rather it is an implied part of the basic contract. We see no derogation of sovereign immunity in that conclusion. Certainly considerations of merchantability and justice require that to that extent the government be

placed in the same category as private individuals issuing bonds. Many cases have held that nongovernmental negotiable instruments bear interest after maturity at the same rate as stipulated for before maturity. (See *Kohler* v. *Smith*, 2 Cal. 597 [56 Am.Dec. 369]; *Casey* v. *Gibbons*, 136 Cal. 368 [68 P. 1032]; *Guy* v. *Franklin*, 5 Cal. 416; *Molera* v. *Cooper*, 173 Cal. 259 [160 P. 231]; *Puppo* v. *Larosa*, 194 Cal. 717 [230 P. 439]; *Nesbit* v. *MacDonald*, 203 Cal. 219 [263 P. 1007].) Although those cases may have been primarily concerned with the *rate* of the interest after maturity, yet they implicitly hold that interest does run after maturity. Some of them base their conclusion on section 3289 of the Civil Code which reads:

"Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation." Others do not. They indicate the distinction between an obligation which does not call for interest at all and one that provides for interest before maturity but is silent as to interest thereafter thus conveying the thought that allowance of interest after maturity is an implied part of the contract rather than damages for the wrongful detention of money. (See *Casey* v. *Gibbons*, *supra*, 371, distinguishing *Malone* v. *Roy*, 107 Cal. 518 [40 P. 1040].) It is said in *Nesbit* v. *MacDonald*, *supra*, 222, involving a promissory note that *did not provide for any interest*:

"In a case *of this character* the interest is not recoverable by virtue of any provision of the note or contract, but is in the nature of damages for detention of the debt. Furthermore, a prayer for 'interest' without specifying the rate is deemed a prayer for legal interest. . . .

"This very question was before the court in the case of *Puppo* v. *Larosa*, 194 Cal. 717, 720, 721 [230 P. 439, 440], and it was there said: 'The promissory note *by its terms bore no interest*. The trial court allowed legal interest thereon from the date of its maturity. . . . If . . . interest *is not expressly reserved*, and the paper matures at a time certain, it will draw interest from its maturity *by operation of law* without prior demand, and at the legal rate. In *such* case interest is in the nature of damages for the detention of the debt, and is not recoverable by virtue of any provision of the contract. (Civ. Code, § 3302; *Gray* v. *Bekins*, 186 Cal. 389, 399 [199 P. 767]; 8 C.J., pp. 1095, 1096, §§ 1425-1427.) . . . The fact that

the contract provides for no interest has nothing whatever to do with the damages due after the breach of the condition for payment on the due date of the note. . . . The action of the trial court in allowing legal interest on the amount due was, therefore, correct.' '' (Italics added.) As stated before there is no invasion of sovereign immunity in applying the above principles to a government bond, or concluding that section 3289 of the Civil Code is applicable. It does nothing more than announce a rule that is fair and just and which should be applied by the court without reference to that section. The foregoing views are in accord with the rule enunciated in *Kendall* v. *Porter, supra,* and, as it appears that *Meyer* v. *City & County of San Francisco, supra,* is obviously inconsistent with that view it must be disapproved except to the extent that it may be said to have been justified on the ground that the authorizing statute there involved indicated that no interest would run after maturity. *Bullard* v. *Riverside County Drainage Dist.,* 41 Cal.App.2d 900 [107 P.2d 929], being based on the Meyer case must be likewise disapproved.

It has been determined in cases in other states, although there is contrary authority, that governmental bonds bearing interest continue to bear interest after maturity. (*State* v. *Village of Brooklyn,* 141 Ohio St. 593 [49 N.E.2d 684]; *City of Indianola* v. *Gates, supra; Peoples Bank & Trust Co.* v. *Sabougla Drainage Dist.,* 186 Miss. 539 [191 So. 93, 824]; see 44 C.J. 1236; Jones, Bonds & Securities (4th ed.), §§ 735, 739; Quindry, Bonds and Bondholders, § 122; McQuillen, Municipal Corps., (2d ed.), vol. 6, § 2431). It is aptly said in *Peoples Bank & Trust Co.* v. *Sabougla Drainage Dist., supra*:

''The sole question for determination in this case, . . . is whether interest is recoverable on the bonds and interest coupons of the drainage district after maturity and until paid. This question was answered in the affirmative in the recent decision in *City of Indianola* v. *Gates,* 181 Miss. 145, 179 So. 284, in respect to municipal bonds, and we see no sound reason for any distinction between municipal bonds and those of other political or taxing districts of the State, such as drainage districts.

''If it could be supposed that as to any of the subdivisions of the State, whether of counties, municipalities or districts, no interest after maturity could be recovered on their bonds

issued for borrowed money, such bonds would be unsalable at any advantageous price; and we must assume that the legislature never for a moment thought that the statutes would be fairly capable of any such an interpretation as would bring about that self-destructive result.'' Many of the authorities involve municipal corporations as distinguished from a state agency such as a county but we see no sound reason to apply a different rule.

With regard to interest on the interest coupons on bonds after maturity of the coupons we find that the matter has been considered in several cases, the holding being that they do not bear interest after the maturity of the coupon. (*Davis* v. *Porter*, 66 Cal. 658 [6 P. 746] ; *Bates* v. *Gerber*, 82 Cal. 550 [22 P. 1115] ; *Molineux* v. *State of California*, 109 Cal. 378 [42 P. 34, 50 Am.St.Rep. 49] ; *Davis* v. *State*, 121 Cal. 210 [53 P. 555] ; *Hewel* v. *Hogin*, 3 Cal.App. 248, 255 [84 P. 1002].) *Davis* v. *County of Yuba*, 75 Cal. 452 [13 P. 874, 17 P. 533], took a contrary view but it was overruled in *Hopkins* v. *Contra Costa County*, 106 Cal. 566 [39 P. 933]. It has been said that by the weight of authority interest coupons do bear interest. (Jones, Bonds & Bond Securities, vol. 2, § 735; 27 A.L.R. 83.) ▪ There is a difference between interest on interest coupons and on the principal of matured bonds. In the latter case the bonds call for interest and even though the statute is silent upon the question of interest after maturity that result should follow by necessary implication. There is ordinarily no provision for interest on the interest coupons at any time and hence we must apply the general rule announced in the cases heretofore cited (*McNutt* v. *City of Los Angeles*, *supra*, et seq.) that interest will not run against a government obligation unless it is imposed by statute or authorized contract.

▪ With the foregoing in mind we turn to the statute under which the bonds in the instant cases were issued to determine if, with reference to interest on the bonds after maturity the statute evinces an intent that it should not continue, and, in regard to interest on interest coupons, provision is made for such interest. The bonds in the Irvine case were issued in 1925 under section 3480 of the Political Code which provided at that time that an election shall be held to decide whether bonds shall be issued in the amount of assessments levied. If the bonds are authorized by the election they shall

be of certain denominations and shall "bear interest at a rate not to exceed six per cent per annum, payable semi-annually on the first day of January and the first day of July in each year at the office of said county treasurer upon the presentation of the proper coupons therefor. Coupons for each installment of interest shall be attached to said bonds and shall bear the facsimile signature of the county auditor. The principal of said bonds shall be made payable on the first day of July, or the first day of January, and in such years as the trustees may prescribe, but said bonds shall be payable serially within twenty years from their date in the manner following, to wit: (1) Not less than ten per centum . . . within ten years from their date. (2) Not less than ten per centum of the aggregate face value of bonds remaining unpaid at the end of ten years shall be payable each year beginning with the eleventh year from their date, until the whole amount of said bonds has been paid. Said bonds shall be substantially in the following form: . . . Reclamation District No. ——, . . . promises to pay to the holder hereof at the office of the treasurer . . . on the first day of ——, 19—, the sum of $——, . . . with interest thereon in like gold coin *from date hereof until paid,* at the rate of —— per cent, per annum, payable at the office of said treasurer semi-annually on the first day of January and the first day of July in each year on presentation and surrender of the interest coupons hereto attached. This bond . . . is based upon and secured by an assessment levied on the lands in said district, . . . And the interest coupons may be substantially in the following form: No. —— The county treasurer of —— county, California, will pay to the holder hereof on the —— day of —— 19—, at his office in said county of —— the sum of $—— in gold coin of the United States out of the funds of Reclamation District No. —— for interest on bond of said district numbered ——. . . . All moneys collected by any county treasurer upon any assessment upon which bonds shall have been issued, including all moneys derived from sale of land for delinquent installments, or from redemption thereof, or from sale of lands bought by the treasurer at any such sale, shall be by such treasurer forthwith paid into the main county treasury to the credit of the bond fund of such reclamation district, and shall be used exclusively for the payment of principal and interest of said bonds issued on such assessment, . . . The

lien of any unpaid assessment upon which bonds shall have been issued shall continue until all said bonds, and any refunding bonds which may be issued, shall have been paid in full, and if for any reason any part of such principal or interest of said bonds, or of refunding bonds shall remain unpaid after enforcement of said assessment as in this article provided, the board of supervisors of the main county shall order an additional or supplemental assessment to be made as provided in section three thousand four hundred fifty-nine, sufficient to pay such unpaid principal and interest; . . . Where bonds of the district have been authorized to be issued on such assessments all unpaid assessments shall bear interest at the rate of seven per cent per annum from the date of the bonds originally issued thereon until such bonds and any refunding bonds issued thereon shall have been fully paid and discharged, and the interest due at any time on said unpaid assessments may be called without calling any installment of the said assessment. The word installment as used in this section shall be construed as applying to interest as well as the principal as the case may be. . . .

''At least ninety days before any interest date of the bonds, including refunding bonds, the county treasurer of the main county shall estimate the amount of money necessary to pay interest and principal maturing on such interest date after crediting thereon the funds in the treasury applicable to the payment thereof, and shall add thereto fifteen per cent of such aggregate sum to cover possible delinquencies, . . . The treasurer shall credit to the bond fund of the district all money collected by him by sale or otherwise, upon assessments against which bonds shall have been issued, including interest and penalties, and he shall likewise credit to said fund the amounts of purchase money paid in bonds or coupons on sales made for said assessment. . . . Any parcel of land bid in and purchased by a treasurer as aforesaid, as trustee of the bond fund of the district, may be sold . . . by him . . . at any time after the expiration of said redemption period of one year, . . . to any person paying him the amount for which said parcel was bid in by said treasurer at delinquent sale, with interest thereon at the rate of seven per cent per annum, compounded yearly, from the date of said delinquent sale, and also the amount of all subsequent installments then delinquent, with accrued interest and penalties thereon. . . .

480

Any balance remaining in such bond fund, after payment in full of the principal and interest of all outstanding bonds of the district, shall be by the treasurer transferred to the general fund of the district. . . . All bonds hereafter issued under this section or under section three thousand four hundred eighty and one-half shall contain a provision as follows: 'This bond is callable, in the manner provided by law, for payment on only interest-payment date, at its face value plus a premium of two per cent; and whenever, on or after such date, funds are provided for payment, interest hereon shall cease.' . . . the county treasurer, . . . shall publish a notice wherein he shall set forth said order of the trustees and shall notify all holders of said bonds to present the same for payment on the date specified and that whenever, on or after such date, funds are received by him for payment of said bonds with a premium of two per cent all interest thereon shall cease." (Italics added.) (Deering's 1923 Pol. Code.)

Prior to its amendment in 1917, that section made specific provisions concerning interest stating:

"If any coupon shall not be paid when presented because there are no funds, the treasurer shall indorse such coupon 'not paid for want of funds' and thereafter the amount due on such coupon shall bear interest at the rate of six per cent per annum compounded semi-annually. . . . If any bond shall not be presented for payment when the same becomes due, it shall cease to draw interest, but, if presented at such time and not paid for want of funds, the said county treasurer shall so indorse it and thereafter such bond shall draw interest until paid at said rate of six per centum per annum compounded semi-annually, until funds shall have been provided for its payment, . . ." (Stats. 1911, p. 639, 650.) Those sentences were eliminated by the 1917 amendment.

In the Bekins case at least a portion of the bonds were refunding bonds issued under section 3480a of the Political Code, formerly section 3480½. The provisions of that section are substantially the same as those of section 3480, in respect to the interest and form of bond.

We find nothing in either of those sections which indicates that the bonds shall not bear interest after maturity or that the interest coupons shall bear interest. Indeed both acts in setting forth the form of the bond affirmatively specify that it shall bear interest *until paid*. While it does go on to state

that the interest shall be payable semiannually on presentation of the interest coupon, that clause must refer to the interest before maturity and does not limit the major clause calling for interest until paid. With reference to the bonds issued under section 3480, it is plain from the reading of that section before its amendment in 1917, that interest did continue on the bonds after maturity but that it shall *cease* unless the bonds are presented and certain conditions exist. The elimination of that clause may be said to evince the thought that while interest continues, the restrictions on that continuance are no longer effective. ■ In regard to coupons, interest was expressly authorized prior to the amendment under certain conditions only. The elimination of those conditions indicates an intention that coupons under the amended act shall not bear interest. It is also of interest to note that prior to the amendment of section 3480 in 1917, the form of the bond did not contain the phrase that it should bear interest from date until paid. The provision for attaching interest coupons to the bonds and payment thereof upon presentation to the treasurer is merely a method for having the interest before maturity represented by coupons. Although there is no provision for the attachment of coupons for post maturity interest, the obvious reason for the absence of such provision is that it is not known whether the bonds will not be paid at maturity, and if not, how long thereafter payment will be delayed. Hence, it is not practicable to attach post maturity interest coupons to the bonds upon issuance. That reasoning does not refute the implication that the bonds continue to bear interest after maturity for the implication arises from the contract and the contingency that the principal may not be paid at maturity. Usually it is contemplated that a debtor or maker of a negotiable instrument will pay the obligation according to his promise, but that does not eliminate the practical supposition that he may not, or establish the proposition that he does not intend to have the interest continue after maturity.

■ Defendants contend that the statute contains no provision for realizing funds for the payment of interest after maturity or for the payment thereof and hence evinces a legislative intent that none shall be payable. That argument is of doubtful persuasiveness in view of the clear implication in the statute that bonds do bear interest after maturity. If

there is no other source for the payment of the bonds than that designated, and that is a part of the agreement, it might mean that the bondholder would never receive the full amount of the principal, but it would not indicate an intent that the principal was not payable under any circumstances. The same is true of the interest on the principal after maturity, which is an implied part of the bond. In any event we do not believe the statute is susceptible of that construction. The particular portion of section 3480 above-mentioned states, that within ninety days before any interest payable date of the bonds, the treasurer shall estimate the amount of money necessary to pay the interest and principal maturing on the interest payable date after crediting the funds on hand, and adding 15 per cent to cover delinquencies. Defendants claim the periods above-mentioned are for calls for the payment of assessments, and only at the time of the maturity dates of the bonds and coupons. But it is not to be supposed that the assessments on which the payment of the bonds are based would not include sufficient to pay interest after maturity. It will be noted that the provision as to calls does not refer to payment of coupons. It refers to interest generally which may well include interest after maturity. Presumably the assessment is levied in the first instance to pay for the reclamation project or other expenses, and the bonds are a method of financing those obligations. The bonds are issued in an ''amount equal to the amount of such assessment, or the part of such assessment remaining unpaid.'' Nothing is there said about interest before or after maturity, but it is not to be supposed that those words require that the assessment and the principal of the bonds be equal, thus excluding even interest before maturity. Defendants rely upon *Bekins* v. *Raub*, 40 Cal.App.2d 709 [105 P.2d 625], as establishing that there may not be calls for assessments after maturity to pay interest, but that case merely involved the question of whether the treasurer could be compelled by mandamus to include in a call the amount necessary to pay bonds that had matured but which had not been paid out of funds raised by a previous call because section 3480 permitted the use of bonds maturing in the future to pay an assessment on a call therefor, thus leaving insufficient cash to pay maturing bonds. That does not mean that those maturing bonds were not to be paid. In the instant actions we are not concerned with when or in

what manner the post maturity interest should be paid. If such interest is payable the demurrers should not have been sustained and plaintiffs are entitled to an adjudication of their rights. We find nothing in that case to indicate that the current interest after maturity may not be met by current calls for assessments. Indeed, if the doctrine announced in *Bekins* v. *Raub, supra*, and *Copeland* v. *Raub*, 36 Cal.App.2d 441 [97 P.2d 859], is correct, the clear indication is that bonds do bear interest after maturity. In the Copeland case it was held that the provision in section 3480 of the Political Code, before its amendment in 1933 (Stats. 1933, p. 1211), limiting the payment of assessments with bonds, to bonds maturing before 90 days after the call, authorized the use of both matured and unmatured bonds to pay assessments. Thereafter the Bekins case held that the treasurer could not be compelled to include in his assessment call any amount to pay bonds that had matured at the time of a prior call but were unpaid for the lack of funds at that time due to assessments having been paid in the prior call by unmatured bonds rather than cash. It cannot be presumed that the Legislature intended to achieve the unjust result that, although the bondholder's bonds were not paid for the above reasons, and could not be paid by subsequent assessment calls and possibly not until all of the assessments had been enforced (see *Rohwer* v. *Gibson*, 126 Cal.App. 707 [14 P.2d 1051]), the bondholder would not be entitled to interest during that period.

There is a method provided by the Legislature in which the bonds may be refinanced and many of the difficulties arising out of the original financing program eliminated. Section 3480a (formerly 3480½) of the Political Code authorizes such refinancing of bonds issued under section 3480 by issuing refunding bonds for all or part of the installments of principal of outstanding bonds. Those bonds bear interest at not exceeding 6 per cent "from the dates, respectively, on which the bonds to be refunded shall mature." Thus the refunding bonds are in a sense a renewal of the old bonds, and the interest payable is, in effect, the interest that would have accrued after maturity of the old bonds if they had not been refunded. The *same assessments* which secured the old bonds secure the refunding bonds. Section 3480a provides:

"The principal and interest of refunding bonds shall be

based on and payable out of the assessment or assessments upon which the bonds so refunded were payable, in accordance with the provisions of section three thousand four hundred eighty of this code.'' One of the purposes of the statute authorizing the issuance of refunding bonds was to provide for the payment of post maturity interest on the old bonds by a regular and systematic scheme which may well be advantageous to the governmental agency. Implicit in that purpose is the thought that interest continues after maturity where no refunding bonds are issued. Moreover, inasmuch as the interest on the refunding bonds is in effect post maturity interest on the old bonds, and the *same* assessments stand as security, the reasonable implication is that such assessment in the first instance was intended to and did contemplate post maturity interest.

Defendant complains that there is no source from which funds can be derived for the payment of post maturity interest, thus evincing a legislative intent that it is not payable. We have heretofore seen that the assessments do contemplate such interest and there are indications in the statute that such is the case. Also it will be remembered that the statute provides for supplemental assessments when ''any part of the principal or interest of said bonds . . . shall remain unpaid after enforcement of the assessments.'' Even if we assume that the supplemental assessment may not be made until all the bonds mature, and all steps for the enforcement of the assessment have been taken, and only when the supplemental assessment will not exceed the value of the benefits to the landowners from the project (see *Rohwer* v. *Gibson, supra*), that does not preclude the running of interest after maturity. Although the interest may run for a long time before the supplemental assessment is made, it cannot be said that economic chaos for the district will follow. It has its relief by way of refunding bond issues which have proven effective to relieve such districts of financial pressure.

There are affirmative indications that the original assessment is the source for the payment of post maturity interest as well as the principal and ante maturity interest. Although not conclusive and possibly subject to other interpretations, taken with the act as a whole, they certainly tend to show that there is no prohibition in the statute against the payment of such interest. We are not in a position to work out the

minute details of the amounts that may be realized from those sources or precisely to what extent they extend to such interest, but we are concerned rather with the legislative intent. The statute provides that the lien of any unpaid assessment shall continue until the bonds shall have been paid in full. The unpaid assessments bear interest at the rate of 7 per cent per annum from the date the bonds are issued until the bonds are "fully paid and discharged." The maximum rate of interest on the bonds is 6 per cent. When the treasurer makes a call he shall add 15 per cent of the amount estimated to be required to cover possible delinquencies. A penalty of 10 per cent is added for delinquency in payment of assessments, and both a redemptioner and a purchaser after the redemption period must pay interest at the rate of 7 per cent per annum. Various other penalties are imposed and all of the funds thereby realized are payable into the bond fund.

On the whole we think that the legislative intent is clear that post maturity interest is recoverable on the bonds involved in the instant actions, but is not recoverable on the interest coupons attached thereto.

For the foregoing reasons the judgments are and each of them is, reversed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Traynor, J., and Schauer, J., concurred.

Respondents' petition for a rehearing was denied August 7, 1944.